# SECURITY SERVICES, INC. *v.* KMART CORP.

No. 93–284.   Argued February 28, 1994—Decided May 16, 1994

SOUTER, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and BLACKMUN, STEVENS, O'CONNOR, SCALIA, and KENNEDY, JJ., joined. STEVENS, J., filed a concurring opinion, *post*, p. 444. THOMAS, J., *post*, p. 444, and GINSBURG, J., *post*, p. 455, filed dissenting opinions.

*Paul O. Taylor* argued the cause and filed briefs for petitioner.

*William J. Augello* argued the cause for respondent. With him on the brief was *Alice I. Buckley.*

*John F. Manning* argued the cause for the United States et al. as *amici curiae* urging affirmance. On the brief were *Solicitor General Days, Deputy Solicitor General Wallace, Michael R. Dreeben, Henri F. Rush,* and *Ellen D. Hanson.*[*]

---

[*]*Joseph L. Steinfeld, Jr., Robert B. Walker, John T. Siegler,* and *Scott H. Lyon* filed a brief for Overland Express, Inc., as *amicus curiae* urging reversal.

*Frederick L. Wood, Nicholas J. DiMichael,* and *Richard D. Fortin* filed a brief for the National Industrial Transportation League as *amicus curiae* urging affirmance.

JUSTICE SOUTER delivered the opinion of the Court.

This case presents the question whether a motor carrier in bankruptcy may recover for undercharges based on tariff rates that are void as a matter of law under the Interstate Commerce Commission's regulations. We hold that the carrier may not rely on the filed but void tariff.

I

On August 20, 1984, petitioner Security Services, Inc., (then known as Riss International Corp.) filed with the Interstate Commerce Commission (Commission or ICC) a mileage (or distance) rate tariff having an effective date 30 days later. The tariff was received, accepted, and filed, and was never rejected by the ICC. Although the tariff specified rates to be charged per mile of carriage, it was not complete in itself, for it included no list of distances or map on which a shipper could rely in calculating charges for a given shipment. For the distance component of this mileage-based tariff, petitioner relied upon a Household Goods Carriers' Bureau (HGCB) Mileage Guide, its supplements, and subsequent issues. HGCB is itself not a carrier, but a publisher of distance guides for use in tariff filings. The Mileage Guide is a 565-page volume of large format, which specifies the distances in miles between various points of origin and destination, and contains maps and supplemental rules. The Mileage Guide refers shippers to a separate HGCB tariff and its supplements, filed with the ICC, for a list of the carriers who are "participants" in the Mileage Guide. A participant is a carrier who pays HGCB a nominal fee and issues it a valid power of attorney. The first page of HGCB's Mileage Guide states that it "MAY NOT BE EMPLOYED BY A CARRIER AS A GOVERNING PUBLICATION FOR THE PURPOSE OF DETERMINING INTERSTATE TRANSPORTATION RATES BASED ON MILEAGE OR DISTANCE, UNLESS CARRIER IS SHOWN AS A PARTICI-

PANT IN THE ABOVE NAMED TARIFF." HGCB, Mileage Guide No. 12, p. 1 (Dec. 1982). HGCB filed a tariff supplement to its Mileage Guide, effective February 19, 1985, listing participants and canceling Riss's participation in the Mileage Guide for failure to pay the nominal participation fee to HGCB. HGCB treats a power of attorney issued to it as void if not renewed by remitting the participation fee within a reasonable time after cancellation. Riss did not renew.

On April 17, 1986, Riss contracted with respondent Kmart Corporation to transport Kmart's goods at rates specified in the contract, and from November 3, 1986, to December 29, 1989, Riss transported goods for Kmart under the contract. Riss billed, and Kmart paid, at the contract rate. In November 1989, Riss filed a Chapter 11 bankruptcy petition and while undergoing reorganization became Security Services. As debtor-in-possession, Security Services billed Kmart for undercharges (and interest) it was allegedly owed, based on the difference between the contract rate Kmart paid and the tariff rates that Riss assertedly had on file with the ICC. Security Services argued that under the Interstate Commerce Act's filed rate doctrine, Kmart was liable for the tariff rates filed with the ICC, regardless of any contract rate negotiated. Kmart refused to pay, and this suit ensued.

The District Court for the Eastern District of Pennsylvania granted summary judgment for Kmart on the ground that Security Services had no valid tariff on file with the ICC (without which it could not collect for undercharges), because HGCB had canceled its participation in the Mileage Guide. The Court of Appeals for the Third Circuit affirmed. 996 F. 2d 1516 (1993). The court reasoned that under ICC regulations Riss's tariff was void for nonparticipation in the HGCB Mileage Guide, that Riss had not filed any mileages of its own to replace its canceled participation, and that the consequently incomplete and void tariff could not support a claim for undercharges. *Id.*, at 1524. The court took the position that, although the ICC regulations operated retroactively to void a filed tariff, that retroactive application was

permissible under this Court's test in *ICC* v. *American Trucking Assns., Inc.*, 467 U. S. 354 (1984). 996 F. 2d, at 1524–1526. Finally, the court rejected Security Services's argument that its failure to participate formally in the HGCB Mileage Guide was a mere technical defect excused by its substantial compliance with the rule requiring it to file its rates with the Commission. *Id.*, at 1526.

We granted certiorari, 510 U. S. 930 (1993), to resolve a Circuit conflict over the validity of the ICC void-for-nonparticipation regulation,[1] and now affirm.

## II

A motor carrier subject to the Interstate Commerce Act must publish its rates in tariffs filed with the ICC. 49 U. S. C. §§ 10761(a), 10762(a)(1). The carrier "may not charge or receive a different compensation for that transportation . . . than the rate specified in the tariff . . . ." § 10761(a). We have held these provisions "to create strict filed rate requirements and to forbid equitable defenses to collection of the filed tariff." *Maislin Industries, U. S., Inc.* v. *Primary Steel, Inc.*, 497 U. S. 116, 127 (1990); accord, *Reiter* v. *Cooper*, 507 U. S. 258, 266 (1993); *Louisville & Nashville R. Co.* v. *Maxwell*, 237 U. S. 94, 97 (1915) ("Ignorance or misquotation of rates is not an excuse for paying or charging either less or more than the rate filed"). The purpose of the filed rate doctrine is "to ensure that rates are both reasonable and nondiscriminatory," *Maislin, supra,* at 119 (citing 49 U. S. C. §§ 10101(a), 10701(a), 10741(b) (1982 ed.)), and failure to charge or pay the filed rate may result in civil or criminal sanctions. See 49 U. S. C. §§ 11902–11904.

---

[1] Compare *Overland Express, Inc.* v. *ICC*, 996 F. 2d 356 (CADC 1993); *Security Services, Inc.* v. *P–Y Transp., Inc.*, 3 F. 3d 966 (CA6 1993); *Brizendine* v. *Cotter & Co.*, 4 F. 3d 457 (CA7 1993), with the decision below, 996 F. 2d 1516 (CA3 1993); see also *Atlantis Express, Inc.* v. *Associated Wholesale Grocers, Inc.*, 989 F. 2d 281 (CA8 1993); *Freightcor Services, Inc.* v. *Vitro Packaging, Inc.*, 969 F. 2d 1563 (CA5 1992), cert. denied, 506 U. S. 1053 (1993).

The ICC has authority to "prescribe the form and manner" of tariff filing, § 10762(b)(1), and the information to be included in tariffs beyond any matter required by statute, § 10762(a)(1). Each carrier is responsible for ensuring that it has rates on file with the ICC. §§ 10702, 10762. Under ICC regulations, a carrier has some choice about the form in which to state its rates, one possibility being a rate based on mileage. A mileage rate has two components: the rate per mile and distances between shipping points. 49 CFR § 1312.30 (1993). A carrier may file the distance portion of the rate by listing in its own tariff the distances between all relevant points, by referring to a map attached to its tariff, or by referring to a separately filed distance guide, such as the HGCB Mileage Guide. § 1312.30(c)(1). Petitioner does not dispute that distance guides are themselves tariffs. Brief for Petitioner 9, n. 4.[2] A carrier may refer to a tariff filed by another carrier or by an agent only by formally "participating" in the referenced tariff, which may be done only by issuing a power of attorney (or concurrence) to the other carrier or agent. 49 CFR §§ 1312.4(d), 1312.10, 1312.27(e) (1993). The Commission's void-for-nonparticipation regulation provides that "a carrier may not participate in a tariff issued in the name of another carrier or an agent unless a power of attorney or concurrence has been executed. Absent effective concurrences or powers of attorney, tariffs are void as a matter of law." § 1312.4(d). Tariff agents like

---

[2] *Amicus* Overland Express, Inc., contends that participation in mileage guides is not required, citing *Revision of Tariff Regulations, All Carriers*, 1 I. C. C. 2d 404, 425 (1984). But the ICC has interpreted its rules to require such participation, *Jasper Wyman & Son—Petition for Declaratory Order—Certain Rates and Practices of Overland Express, Inc.*, 8 I. C. C. 2d 246, 249–252 (1992) (applying void-for-nonparticipation regulation), petition for review granted, *Overland Express, Inc.* v. *ICC*, 996 F. 2d 356 (CADC 1993), and its interpretation of its own regulations is entitled to "controlling weight unless it is plainly erroneous or inconsistent with the regulation," *Bowles* v. *Seminole Rock & Sand Co.*, 325 U. S. 410, 414 (1945). The ICC's interpretation is neither.

HGCB are required to identify carriers participating in their tariffs, by listing their names either in the tariff containing the mileage guide itself, or in a separate tariff. §§ 1312.13(c), 1312.25. The listings are meant to be kept reasonably current, but are effective until changed. "Revocation or amendment of the power of attorney should be reflected through lawfully published tariff revisions effective concurrently. In the event of failure to so revise the applicable tariff or tariffs, the rates in such tariff or tariffs will remain applicable until lawfully changed." § 1312.10(a). That is, cancellation of a power of attorney (whether by carrier or agent) is accomplished by filing or amending a tariff. §§ 1312.10(a), 1312.25(d), 1312.17(b). Until such filing or amendment, the carrier's reference to the agent's tariff remains effective, § 1312.10(a); once the agent's tariff is filed or amended to note cancellation of the carrier's participation, the carrier's tariff is void as a matter of law (absent additional filing by the carrier). See § 1312.4(d).[3] As the ICC explained, once cancellation of participation is published, as it was here, the mileage-based tariff is incomplete, and "cease[s] to satisfy the fundamental purpose of tariffs; to disclose the freight charges due to the carrier." *Jasper Wyman & Son—Petition for Declaratory Order—Certain Rates and Practices of Overland Express, Inc.*, 8 I. C. C. 2d 246, 258 (1992) (applying void-for-nonparticipation regulation), petition for review granted, *Overland Express, Inc.* v. *ICC*, 996 F. 2d 356 (CADC 1993).

Congress passed the Motor Carrier Act of 1980, 94 Stat. 793, to encourage competition in the industry. In response to this enactment and changes in the carrier market, the ICC

[3] The ICC has apparently had a similar rule for many decades. In Cancelation of Participation in Agency Tariffs, 4 Fed. Reg. 4440 (1939), the Commission made clear that if an agent in whose tariff a carrier participated canceled the carrier's participation for nonpayment of dues or failure to follow the agent's rules, the carrier could no longer lawfully rely on the agent's tariffs and had to file its own tariffs to comply with the Act.

simplified its tariff filing rules, as by eliminating the requirement that the actual powers of attorney be filed with the ICC. See 48 Fed. Reg. 31265, 31266 (1983); see also *Revision of Tariff Regulations, All Carriers*, 1 I. C. C. 2d 404, 408 (1984). The ICC's rule that "participation" is required, however, remained in force. See *id.*, at 434; see also 48 Fed. Reg. 31266 (1983) ("The obligation to limit tariff publication to existing agency relationships remains, however, as a matter of law"). Many shippers and carriers nevertheless responded to the very changes in the market that prompted the ICC's revision of its rules by ignoring the rates the carriers had filed with the ICC and instead negotiating rates for carriage lower than the filed rates. As a further result of competitive pressures, many carriers also went bankrupt. A number of trustees and debtors-in-possession then attempted to recover as undercharges the difference between the negotiated and filed rates. Since the market changes convinced the ICC that strict adherence to the filed rate doctrine was no longer necessary under some circumstances, *Maislin*, 497 U. S., at 121, the ICC decided to follow a new policy of determining, case by case, whether it would be an "unreasonable practice" under 49 U. S. C. § 10701 for a carrier (often by then bankrupt) to recover for undercharges from a shipper who had paid a negotiated, rather than filed, rate. See *National Industrial Transportation League— Petition to Institute Rulemaking on Negotiated Motor Common Carrier Rates*, 3 I. C. C. 2d 99, 104–108 (1986); 5 I. C. C. 2d 623, 628–634 (1989). In *Maislin*, we held that this ICC practice violated the core purposes of the Act, because "[b]y refusing to order collection of the filed rate solely because the parties had agreed to a lower rate, the ICC has permitted the very price discrimination that the Act by its terms seeks to prevent." 497 U. S., at 130 (citing 49 U. S. C. § 10741). Thus, we held that any bankruptcy trustee or debtor-in-possession was entitled to recover for undercharges based on effective, filed rates.

Petitioner argues that the effect of the void-for-non-participation rule is to allow transactions to be governed by secretly negotiated rates, rather than the publicly filed rates mandated by the Act. Petitioner would thus have us see the ICC's recent enforcement of its void-for-nonparticipation regulation as merely an attempt to evade *Maislin* and undermine the filed rate doctrine by keeping trustees or debtors-in-possession from recovering for undercharges.

The argument is an odd one.[4] The filed rate requirement mandates that carriers charge the rates filed in a tariff. We held in *Maislin, supra,* that the requirement was not subject to discretionary enforcement when raised against a shipper

---

[4] We have no occasion even to reach its factual predicate, which is vigorously disputed. Security Services argues that the agency failed to enforce its regulation from amendment in 1984 until 1993. Petitioner contends that the ICC routinely accepted tariffs containing methods for computing distances that were not authorized by 49 CFR § 1312.30(c) (1993), and that from 1984 to 1988, approximately 40 percent of all motor carriers filing distance rate tariffs referring to HGCB mileage guides did so without formally participating in them. See *Overland Express,* 996 F. 2d, at 359. Petitioner states that the ICC took no action after discovering these failures to participate. The Government argues that the ICC currently enforces its void-for-nonparticipation rule. It represents, for example, that in fiscal year 1993, the ICC "entered 24 consent decrees with carriers who had let their participations in mileage guides and other tariffs lapse, . . . sought and obtained one injunction, and . . . issued an order pursuant to its broad remedial powers" directing carriers who had let their participation in the HGCB lapse either to renew their participation or "strike any reference" to the Mileage Guide in their tariffs. Tr. of Oral Arg. 42. The Government also disputes the assertion that 40 percent of carriers referring to an HGCB guide failed to participate in the guide. The Government and Kmart claim that HGCB found only 111 such failures among the filings of some 12,800 carriers who referred to HGCB guides, and that the ICC has taken action for failure to participate. See *Household Goods Carriers' Bureau, Inc.—Petition for Cancellation of Tariffs of Non-Participating Carriers,* 9 I. C. C. 2d 378 (1993); *National Motor Freight Traffic Assn.—Petition for Cancellation of Tariffs That Refer to the National Motor Freight Classification, but are Filed by or on Behalf of Non-Participating Carriers,* 9 I. C. C. 2d 186 (1992).

who had agreed with a carrier to a negotiated rate lower than the rate on file. When the carrier's bankruptcy prompted second thoughts about the wisdom of the agreement, the carrier and its creditors obtained the benefit of the requirement. Here, as in *Jasper Wyman, supra,* the carrier seeks to escape its burden by recovering for undercharges even though in effect it had no rates on file because its tariff lacked an essential element. The filed rate rule applied here to bar the carrier's recovery is the same rule that was applied to bar the shipper's defense. Nor is the rule somehow more technical or less equitable when applied against Security Services. It can hardly be gainsaid that a carrier employing distance rates without purporting to be bound by stated distances would be just as well placed to discriminate among shippers by measuring with rubber instruments as it would be by charging shippers for a stated distance at mutable rates per mile. While some may debate in other forums about the wisdom of the filed rate doctrine, it is enough to say here that the carriers cannot have it both ways.[5]

## III

Petitioner is left to invoke the limitations on the ICC's authority to declare a rate void retroactively, and the "technical defect" rule.[6] Neither is availing.

---

[5] Both JUSTICE THOMAS, *post,* at 451, and n. 3, and JUSTICE GINSBURG, *post,* at 457–458, argue that the effect of today's ruling is to validate secretly negotiated rates. Indeed, JUSTICE THOMAS goes so far as to suggest that our opinion would allow the ICC to circumvent *Maislin Industries, U. S., Inc.* v. *Primary Steel, Inc.,* 497 U. S. 116 (1990), merely by declaring that a filed rate is void whenever another rate is negotiated, *post,* at 455. But our opinion does nothing of the kind. The Interstate Commerce Act states that carriers may provide transportation "only if the rate for the transportation or service is contained in a tariff that is in effect" under the provisions of the Act, 49 U. S. C. § 10761(a), and the Act provides for civil and criminal penalties for failure to maintain such rates, and to charge or pay them. See generally §§ 11901–11904.

[6] JUSTICE THOMAS in dissent argues that we ignore petitioner's "broader argument . . . that the rule is not within the Commission's authority." See *post,* at 453, n. 4. But petitioner's question presented was whether

## A

The Court of Appeals believed, 996 F. 2d, at 1524–1526, as petitioner now argues, that the void-for-nonparticipation rule retroactively voids rates and is thus subject to the analysis we applied in *American Trucking*, 467 U. S., at 361–364, 367. See also *Overland Express*, 996 F. 2d, at 360. In *American Trucking*, we held that the Commission could retroactively void effective tariffs *ab initio* only if the action "further[s] a specific statutory mandate of the Commission" and is "directly and closely tied to that mandate." 467 U. S., at 367. But the rule is not apposite here, for the void-for-nonparticipation regulation does not apply retroactively. The ICC did not, as in *American Trucking*, void a rate for a period during which an effective rate was filed. The ICC's regulations operate to void tariffs that would otherwise apply to future transactions, by providing that the rate becomes inapplicable when the tariff reference to the Mileage Guide is canceled, *i. e.*, from the moment at which examination of the tariff filings would show that the carrier's tariff is incomplete, 49 CFR § 1312.10(a) (1993), after which the shipper would be unable to rely on the incomplete tariff to calculate the applicable charges.[7] Transactions occurring before cancellation of the power of attorney are governed by

---

"the Interstate Commerce Commission has discretionary authority to retroactively void an effective tariff." Brief for Petitioner i. On the same page cited by JUSTICE THOMAS for petitioner's "broader argument," petitioner in fact describes the ICC rule as "treating [tariffs] as retroactively void," *id.*, at 20, and petitioner concludes the section by arguing that the ICC has no power "to retroactively void effective tariffs." *Id.*, at 24. Petitioner's argument in that section is that the Interstate Commerce Act "prescribes the remedies available to Kmart," *id.*, at 17, not that the regulation is ultra vires. Indeed, at oral argument, counsel for petitioner stated that the ICC's void-for-nonparticipation rule "is authorized. The rule is proper, but the application of the rule . . . is contrary to law." Tr. of Oral Arg. 17.

[7] If a canceled participation is renewed before the effective cancellation date, participation may be restored on five days' notice by filing an amended tariff. 49 CFR § 1312.39(a) (1993).

the filed rate; transactions occurring after cancellation would have no filed mileages to which a carrier's per-mile tariff rates would apply to determine charges due. The regulation does not require any ICC "retroactive rejection" of a filed rate, or indeed any agency action at all. The regulation works like an expiration date on an otherwise valid tariff in voiding its future application, in accordance with § 1312.23(a). Neither regulation works a retroactive voiding. We thus disagree with the Court of Appeals for the District of Columbia Circuit, which held that once a tariff is in effect, a regulation that voids the tariff operates retroactively. *Overland Express, supra,* at 360.

Here, petitioner's tariff reference to the HGCB Mileage Guide became void as a matter of law and its tariff filings incomplete on their face on February 19, 1985, when HGCB canceled its participation in the Mileage Guide by filing a supplemental tariff. The transactions with Kmart occurred after that date.

### B

Nor does the "technical defect" rule apply here. Under our cases, neither procedural irregularity nor unreasonableness nullifies a filed rate; the shipper's remedy for irregularity or unreasonable rates is damages. See, *e. g., Berwind-White Coal Mining Co.* v. *Chicago & Erie R. Co.,* 235 U. S. 371 (1914); *Davis* v. *Portland Seed Co.,* 264 U. S. 403 (1924). In *Berwind-White,* the Court held that filed tariffs falling short of full compliance in stylistic matters were still "adequate to give notice" and so could support a carrier's claim against a shipper for charges due. 235 U. S., at 375. In *Davis,* the effect of applying the carrier's tariff violated a former statutory bar to charging less for a longer distance than for a shorter one over the same route, other things being equal. The Court rejected the position that the higher rate was void and the lower rate legally applicable, so that damages would depend upon the difference between the two, and held that the shipper's remedy was instead to

be measured by its actual damages from having been charged the higher rate as compared to a reasonable one. 264 U. S., at 424–426.[8]

Unlike the shippers in the "technical defect" cases, the shipper here could not determine the carrier's rates, since under the regulations, distance tariffs are incomplete once the carrier's participation in the Mileage Guide has been canceled by the agent's filing. See 49 CFR §§ 1312.4(d), 1312.10(a), 1312.30 (1993). We are dealing not with a complete tariff subject to some blemish independently remediable, but with an incomplete tariff insufficient to support a reliable calculation of charges. Security Services, however, questions the distinction by arguing that a shipper is unlikely to search for the list of participating carriers and to determine from the agent's supplemental tariffs that a carrier's participation has been canceled. Rather, a shipper is likely only to follow the reference in the carrier's tariff to the HGCB Mileage Guide, and can fully calculate the applicable charges. But the likelihood or unlikelihood of a shipper's actually reading all the applicable tariffs is simply irrelevant, for carriers and shippers alike are charged with constructive notice of tariff filings, *Kansas City Southern R. Co.* v. *Carl*, 227 U. S. 639, 653 (1913); *Reiter* v. *Cooper*, 507 U. S., at 266, and the fact that shippers may take shortcuts through the filings cannot convert an incomplete tariff into a complete one. In sum, a tariff that refers to another tariff for essential information, which tariff in turn states that the carrier may not refer to it, does not provide the "adequate notice" of rates to be charged that our "technical defect" cases require.

---

[8] See also *Texas & Pacific R. Co.* v. *Cisco Oil Mill*, 204 U. S. 449 (1907) (Tariff rates filed with ICC and furnished to freight officers of railroad are legally operative despite railroad's failure to post two copies in each railroad depot); *Genstar Chemical Ltd.* v. *ICC*, 665 F. 2d 1304, 1309 (CADC 1981) ("[T]he 'error' in the tariff was certainly not apparent on its face"), cert. denied, 456 U. S. 905 (1982).

## IV

When a carrier relies on a mileage guide filed by another carrier or agent, under ICC regulations the carrier must participate in the guide by maintaining a power of attorney; when a carrier fails to maintain its power of attorney and its participation is canceled by its former agent's filing of an appropriate tariff, the carrier's tariff is void. Trustees in bankruptcy and debtors-in-possession may rely on the filed rate doctrine to collect for undercharges, *Maislin Industries, U. S., Inc.* v. *Primary Steel, Inc.,* 497 U. S. 116 (1990), but they may not collect for undercharges based on filed, but void, rates. The decision of the Court of Appeals is accordingly

*Affirmed.*

JUSTICE STEVENS, concurring.

Although I remain convinced that the Court stumbled badly in *Maislin Industries, U. S., Inc.* v. *Primary Steel, Inc.,* 497 U. S. 116 (1990), when it rejected the sensible construction of the Interstate Commerce Act that had been adopted by six Courts of Appeals and the agency responsible for the Act's enforcement, see *id.,* at 139 (dissenting opinion), I agree with the Court's disposition of this case. I write only to note that both this case and *Maislin* involve a carrier in bankruptcy seeking to enforce a "filed" rate that was higher than the one it negotiated with the shipper; in neither case was there any allegation or evidence that a carrier had violated the "core purposes of the Act" by charging discriminatory rates. See *ante,* at 438; 497 U. S., at 130.

JUSTICE THOMAS, dissenting.

The Court today concludes that the Interstate Commerce Commission has the authority to promulgate regulations under which a carrier's duly filed and effective tariff automatically becomes "void" without "any agency action at all," *ante,* at 442, if the carrier at some time after filing fails to

comply with certain requirements of the Commission's regulations. Because I find nothing in the Interstate Commerce Act that expressly or impliedly gives the Commission such authority, I respectfully dissent.

I

The Interstate Commerce Act (Act), 49 U. S. C. § 10101 *et seq.*, requires motor common carriers such as petitioner to publish and file with the Interstate Commerce Commission (Commission or ICC) tariffs containing their rates for transportation or other service under the Commission's jurisdiction, § 10762(a)(1), and forbids them to "charge or receive a different compensation for that transportation or service than the rate specified in the tariff," § 10761(a). In other words, common carriers must charge the filed rate and only the filed rate. This "filed rate doctrine" admits of few exceptions. As we have often stated, " '[d]eviation from [the filed rate] is not permitted upon any pretext. . . . This rule is undeniably strict and it obviously may work hardship in some cases, but it embodies the policy which has been adopted by Congress.' " *Maislin Industries, U. S., Inc.* v. *Primary Steel, Inc.*, 497 U. S. 116, 127 (1990) (quoting *Louisville & Nashville R. Co.* v. *Maxwell*, 237 U. S. 94, 97 (1915)).

That much is not in dispute. Cf. *ante*, at 435; *post*, at 455. This case turns, not on an application of the filed rate doctrine *per se*, but on the extent of the Commission's authority to determine what rates and tariffs are "filed" or, in the terms of the statute, "in effect." 49 U. S. C. § 10761(a). ICC regulations permit a carrier to file a tariff that incorporates another entity's tariff by reference, provided that the carrier "participates" in that entity's tariff—that is, provided that the carrier maintains an effective concurrence or power of attorney with the publisher of the referenced tariff. See 49 CFR §§ 1312.27(e), 1312.30(c)(4), 1312.4(d) (1993). The regulatory provision at issue here, the so-called "void-for-nonparticipation rule," provides that "[a]bsent effective con-

currences or powers of attorney, tariffs are *void as a matter of law.*" § 1312.4(d) (emphasis added).

Taking advantage of the ability to participate in other entities' tariffs, petitioner filed a tariff with the Commission that specified rates per mile for the carriage of various goods and provided that distances would be calculated using a filed tariff (often referred to as a distance guide) of the Household Goods Carriers' Bureau (HGCB). See App. 27. The Commission accepted the tariff for filing, and it became effective. At some point between the effective date of petitioner's tariff and the shipments at issue here, however, petitioner allowed its participation in the HGCB distance guide to lapse. After transporting goods for respondent under a contract that provided for a rate lower than the filed rate, petitioner sought to recover the difference between the filed rate and the contract rate in an action for undercharges. See 49 U. S. C. § 11706(a). The Third Circuit held the filed rate unenforceable because petitioner had failed to maintain its participation in the distance guide; its tariff was void under 49 CFR § 1312.4(d) (1993). See 996 F. 2d 1516, 1524 (1993). Petitioner challenges the Commission's authority to promulgate § 1312.4(d)'s void-for-nonparticipation rule.

## II

We considered a similar challenge to the Commission's statutory authority in *ICC* v. *American Trucking Assns., Inc.,* 467 U. S. 354 (1984). At issue there was the Commission's power to reject an effective tariff that had been submitted in substantial violation of a rate-bureau agreement. In determining whether that remedy was within the Commission's authority, we asked two questions: first, whether the Act expressly authorized the agency action in question, see *id.,* at 361–364; and second, if it did not, whether the remedy nevertheless was "direct[ly] adjunct to the Commission's explicit statutory power"—that is, whether it "further[ed] a specific statutory mandate" and was "directly and

closely tied to that mandate." *Id.*, at 365, 367 (internal quotation marks omitted). To ascertain whether the void-for-nonparticipation rule is within the Commission's power, we should ask the same questions.

The Court dispenses with the inquiry outlined in *American Trucking*, however, in the belief that the decision applies only to cases involving "retroactiv[e]" action by the Commission. *Ante*, at 440. It is true that in *American Trucking*, the Commission's rejection remedy operated retroactively by voiding the tariff *ab initio*. Thus, unlike the Commission's action in this case, the remedy affected the charges for transportation completed before the rejection took place. The Court, however, misapprehends the scope of our holding. Far from establishing a special test for retroactive Commission actions, *American Trucking* merely applied established principles delimiting the Commission's implied or adjunct powers. Although the retroactive effect of the proposed remedy was relevant to our assessment of the Commission's authority, it did not alter our method of analyzing the statutory challenge to the Commission's power.

Indeed, the decisions upon which we relied in *American Trucking* make clear that the methodology we pursued in that case is not limited to situations involving retroactive agency action. See *American Trucking, supra,* at 365–366 (discussing *Trans Alaska Pipeline Rate Cases,* 436 U. S. 631 (1978), and *United States* v. *Chesapeake & Ohio R. Co.,* 426 U. S. 500 (1976)). Those cases involved "the Commission's efforts to place reasonable conditions on the acceptance of proposed tariffs" as an alternative to suspension of the tariffs pending investigation. 467 U. S., at 365. In *Chesapeake & Ohio*, the Court considered whether conditions imposed on immediate acceptance of a tariff, although not expressly authorized by the Act, were impliedly authorized because they were "directly related to" the Commission's specific statutory mandate to review, and to suspend if neces-

sary, tariff rates when filed. 426 U. S., at 514. Similarly, we held in *Trans Alaska* that, "as in *[Chesapeake & Ohio]*, the . . . conditions [imposed were] a '. . . direct adjunct to the Commission's explicit statutory power to suspend rates pending investigation,' in that they allow[ed] the Commission, in exercising its suspension power, to pursue 'a more measured course' and to 'offe[r] an alternative tailored far more precisely to the particular circumstances' of these cases." 436 U. S., at 655 (quoting *Chesapeake & Ohio, supra,* at 514). In both cases, although the actions had only prospective effect, we determined whether they came within the Commission's implied powers by applying essentially the same test that we subsequently applied in *American Trucking* to determine whether the action was within the Commission's implied powers. See 467 U. S., at 367.

## III

### A

Proceeding with the analysis outlined above, I necessarily begin with the terms of the statute. The Act expressly gives the Commission an "impressive array of prescriptive powers, overcharge assessments, damages remedies, and civil and criminal fines" to enable it to enforce the filing and substantive requirements of the Act. *Id.,* at 379 (O'CONNOR, J., dissenting). See also *id.,* at 359–360. Nowhere, however, does the Act give the Commission authority to render a duly filed and effective tariff void upon noncompliance with a statutory or regulatory requirement.

It might be thought that the most likely source of authority to promulgate the void-for-nonparticipation rule is 49 U. S. C. § 10762(e), which authorizes the Commission to "reject" tariffs. *American Trucking,* however, forecloses reliance on that section. Although § 10762(e) does not by its terms apply only to proposed tariffs, we concluded in *American Trucking* that "unbridled discretion to reject effective tariffs at any time would undermine restraints placed by

Congress on the Commission's power to suspend a proposed tariff." 467 U. S., at 363.[1]  We therefore held that § 10762(e) does not apply "to tariffs that have gone into effect." *Id.*, at 362.  The critical point for our analysis of the Commission's express authority under the Act was not that the proposed remedy was retroactive, but that it voided an effective tariff.  Our holding was premised on recognition that once a tariff becomes effective, the Commission's power to nullify it is limited by the Act.[2]  Section 10704(b), for example, "which deals with the Commission's authority to cancel *effective* tariffs," requires a full Commission hearing before action is taken. *Id.*, at 363 (emphasis added).  The void-for-nonparticipation rule, which nullifies effective tariffs, provides none of the same procedural protections.  Quite the contrary, it obviates the need for "any agency action at all." *Ante*, at 442.

---

[1] The Commission may, pending investigation, suspend a *"proposed* rate, classification, rule, or practice at any time for not more than 7 months beyond the time it would otherwise go into effect." 49 U. S. C. § 10708(b) (emphasis added).  To do so, the Commission must notify the carrier and file a notice of suspension with the proposed tariff.  If the Commission fails to act by the end of the suspension period, the tariff goes into effect. *Ibid.*

[2] The D. C. Circuit has linked this conclusion to the concept of retroactivity.  See *Overland Express, Inc.* v. *ICC*, 996 F. 2d 356, 360 (CADC 1993) ("That a tariff was effective or in effect is what makes rejection retroactive"), cert. pending, No. 93–883.  Cf. JUSTICE GINSBURG's dissent, *post*, at 457.  I agree with the Court that the void-for-nonparticipation rule operates only prospectively, see *ante*, at 441, because the rule does not affect any transportation provided prior to the lapse in participation that triggers application of the rule.  Nevertheless, because *American Trucking* focused, not on retroactivity, but on the Commission's nullification of an *effective* tariff, the D. C. Circuit properly concluded that the decisive factor for *American Trucking*'s statutory analysis was the rejection of a tariff after its effective date.  In other words, the D. C. Circuit was correct in stating in the disjunctive that "[t]he Commission is restricted [by *American Trucking*'s holding] whenever it attempts to invalidate (*or* alter the past effects of) a tariff after the application period has ended." *Overland Express, supra*, at 360 (emphasis added).

Perhaps realizing that the Act's provisions relating to the suspension or rejection of tariffs provide no authority for the void-for-nonparticipation rule, the Commission relies instead on § 10762(a)(1), which allows the Commission to "prescribe other information" to be included in tariffs. See *Wonderoast, Inc.*, 8 I. C. C. 2d 272, 275 (1992). That section, however, says nothing about enforcement of the requirements the Commission imposes, and thus does not—at least expressly—expand the scope of the Commission's enforcement mechanisms. Reading it to do so would pose the same problem that led us to construe § 10762(e) narrowly in *American Trucking*. An unlimited power to reject effective tariffs would render the "temporal and procedural constraints" of other sections of the Act "nugatory" and would permit the Commission to void a tariff "at any time and without any procedural safeguards." *American Trucking, supra,* at 363.

## B

The absence of explicit authority in the Act does not end our inquiry, because Congress did not limit the Commission to the powers expressly granted by the Act. See 49 U. S. C. § 10321(a) ("Enumeration of a power of the Commission in this subtitle [§§ 10101–11917] does not exclude another power the Commission may have in carrying out this subtitle"). See also *American Trucking, supra,* at 364–365 ("The Commission's authority under the [Act] is not bounded by the powers expressly enumerated in the Act") (citing § 10321(a)). Thus, we have recognized that in addition to its express powers, the Commission has implied authority to take actions that are "direct[ly] adjunct to [its] explicit statutory power." 467 U. S., at 365 (internal quotation marks omitted). The Third Circuit, which applied the *American Trucking* analysis of the express and implied authority of the Commission, concluded that the void-for-nonparticipation rule is impliedly authorized by the Act because it is directly adjunct to the Commission's statutory power under § 10762(a)(1) to deter-

mine what information shall be included in tariffs. See 996 F. 2d, at 1525–1526. The court failed, however, to consider the relationship of the rule to the Act as a whole. Viewed in isolation, any remedy designed to enforce a regulation promulgated under the Act might be said to be "adjunct" to the relevant provision of the Act, but *Maislin* makes clear that the Act must be considered in its entirety. "[A]lthough . . . the Commission may have discretion to craft appropriate remedies for violations of the statute"—and, possibly, violations of its regulations—the remedy may not "effectively rende[r] nugatory the requirements of §§ 10761 and 10762" and thereby "conflic[t] directly with the core purposes of the Act." *Maislin,* 497 U. S., at 133.

Viewed in this light, it is clear that far from being "directly adjunct" to a statutory power of the Commission, the void-for-nonparticipation rule is directly contrary to the Act's commands and, indeed, to the essence of the filed rate doctrine. The rule nullifies an effective tariff—that is, one that has been filed and gone into effect, § 10762(a)(2), and has not been suspended or set aside by the Commission or canceled by the carrier—without "any agency action at all," *ante,* at 442, and allows to stand a rate negotiated between a carrier and a shipper but never filed. Like the policy contested in *Maislin,* the void-for-nonparticipation rule thus "undermines the basic structure of the Act" by sanctioning adherence to an unfiled rate. 497 U. S., at 132.[3]

---

[3] When the Commission displaces or finds inapplicable a particular filed rate under other sections of the Act expressly authorizing it to do so, that rate is generally replaced either by a reasonable rate prescribed by the Commission, see 49 U. S. C. § 10704(b), or by a different *filed* rate. See *Maislin,* 497 U. S., at 129, n. 11 ("None of our cases involving a determination by the ICC that the carrier engaged in an unreasonable practice have required departure from the filed tariff schedule altogether; instead, they have required merely the application of a different filed tariff"); *ICC* v. *American Trucking Assns., Inc.,* 467 U. S. 354, 358 (1984). As JUSTICE GINSBURG explains, see *post,* at 457–458, by sanctioning a rate negotiated by the parties, the Commission, now with the Court's approval, condones

The ability of both carrier and shipper to rely on the tariff on file with the Commission is central to the Act's filed rate provisions. See *American Trucking*, 467 U. S., at 363–364, n. 7. Therefore, we have consistently held that "[u]nless and until suspended or set aside, [the rate in the published tariff] is made, for all purposes, the legal rate, as between carrier and shipper." *Keogh* v. *Chicago & Northwestern R. Co.*, 260 U. S. 156, 163 (1922). See also *Maislin, supra*, at 126. This remains the case even if the filed tariff does not conform with technical filing requirements, see, *e. g.*, *Berwind-White Coal Mining Co.* v. *Chicago & Erie R. Co.*, 235 U. S. 371 (1914), or violates a clear prohibition in the statute. See *Davis* v. *Portland Seed Co.*, 264 U. S. 403 (1924) (enforcing tariff rate that unlawfully assessed a higher charge for a shorter shipment than a longer shipment along the same route). As long as a tariff is "received and placed on file by the Commission without any objection whatever . . . [and] as a matter of fact [is] adequate to give notice," that tariff controls. *Berwind-White, supra*, at 375.

There can be no doubt that petitioner's tariff was sufficiently complete "as a matter of fact" to give notice of the applicable charge. 235 U. S., at 375. Petitioner's tariff was filed with (and accepted by) the Commission and became effective well before the transportation at issue. It has never been suspended or set aside by the Commission or canceled by petitioner. At all times it stated that distances would be determined by reference to the HGCB distance guide—an effective, duly filed tariff. See App. 27. Neither respondent nor the Commission suggests any confusion or ambiguity as to what charge would be due under petitioner's tariff, but for the challenged void-for-nonparticipation rule. As JUSTICE GINSBURG explains, see *post*, at 458–459, petitioner and respondent could calculate the appropriate charge (if either desired) just as easily after petitioner's participation lapsed

---

precisely the "secret" rates and the potential for price discrimination that the Act was intended to prohibit. See 49 U. S. C. § 10101(a)(1)(D).

as they could on the date petitioner's tariff was filed. Under our prior filed rate cases, nothing more is required for the filed tariff to be enforced.

## IV

The Court's refusal to apply *American Trucking*'s two-step method of statutory analysis leads to a remarkable result: The Court upholds an agency regulation challenged as beyond the agency's statutory authority without ever considering whether any provision of the statute explicitly authorizes the regulation and, if not, whether the regulation is sufficiently related to an express statutory authority to be within the agency's implied powers. Indeed, much of the Court's analysis simply begs the question whether the Commission had authority to promulgate the void-for-nonparticipation rule.[4] In the Court's view, petitioner cannot appeal to our precedents governing the enforcement of filed tariffs because "under the regulations, distance tariffs are incomplete once the carrier's participation in the [HGCB] Mileage Guide has been canceled." *Ante*, at 443. Similarly, the Court concludes that *Maislin* requires that petitioner's tariff not be enforced because petitioner "had no rates on file because its tariff lacked an essential element." *Ante*, at 440. In both instances, the Court assumes that the void-for-nonparticipation rule is valid, and that petitioner's tariff is therefore void. But *whether* the Commission may deem the tariff incomplete as a matter of law through 49 CFR

---

[4] In considering the case closed after rejecting the contention that the void-for-nonparticipation rule is impermissibly retroactive under *American Trucking*, the Court also ignores petitioner's broader argument. Although petitioner does assert that the void-for-nonparticipation rule is "retroactive," see Brief for Petitioner 7–16, it also contends more generally that the rule is not within the Commission's authority. See *id.*, at 17–24. Specifically, petitioner argues that the Act's "carefully integrated and complete system of procedures, remedies and penalties" does not "giv[e] the ICC the broad nullification power set forth in 49 C. F. R. § 1312.4(d)." *Id.*, at 17, 20.

§ 1312.4(d) (1993) is precisely the question we are asked to answer.[5]

In failing even to consider the Commission's authority to promulgate the void-for-nonparticipation rule, and thereby to void effective tariffs, the Court also fails to consider any limit the Act might place on that authority. Under the Court's holding, it would appear that the Commission could provide that tariffs will become void, without "any agency action at all," *ante*, at 442, because of any number of technical or substantive defects, all in the name of enforcing the provisions of the Act and ICC regulations. In each instance, noncompliance would enable a carrier and preferred shippers to negotiate more favorable rates with the assurance that the rate on file could not be enforced. Until the Commission examines the carrier's tariff carefully and sets it aside (actions ostensibly made unnecessary by the void-for-nonparticipation rule), the unfiled rates, rather than the filed-but-void tariff, will govern the relationship between the parties.

The unfortunate lesson for the Commission is that its Court-sanctioned voiding power provides the key to unraveling the Act's filed rate requirements.[6] If the Court is correct, the Commission's mistake in *Maislin* was its choice of remedies, not its objective. In *Maislin*, the Commission attempted to justify its policy of refusing to enforce a filed tariff rate where the parties had negotiated a different rate

---

[5] The Court's suggestion that the carrier "cannot have it both ways," *ante*, at 440—that is, that it cannot rely rigidly on the filed rate doctrine in some cases to enforce the effective rates on file with the Commission and at the same time not suffer the harsh consequences of the doctrine when its rate on file is ineffective—presents the same problem. The Court assumes that there is no filed rate to bind any party in the absence of current participation in the HGCB distance guide.

[6] It is also worth noting that the Court's rationale should apply equally to other agencies operating under filed rate regimes, such as, for example, the Federal Communications Commission. See 47 U. S. C. § 203 (1988 ed. and Supp. IV).

"as a remedy for the carrier's failure to comply with § 10762's directive to file the negotiated rate with the ICC." 497 U. S., at 131. We rejected that rationale because "§ 10761 *requires* the carrier to collect the filed rate." *Ibid.* Under the reasoning the Court applies today, however, it appears that the Commission merely chose the wrong remedy: It should have promulgated a rule declaring a filed tariff "void as a matter of law" upon negotiation of a different rate, thereby rendering the filed rate unenforceable. Section 10761 and the filed rate doctrine would not stand in the way, in the Court's view, because the carrier would have no effective rate on file. See *ante*, at 439–443. In my view, the Court's reasoning will permit the Commission to turn the filed rate doctrine on its head.

For the foregoing reasons, I respectfully dissent.

JUSTICE GINSBURG, dissenting.

The filed rate doctrine is an integral part of the Interstate Commerce Act. See 49 U. S. C. § 10761(a) (a "carrier may not charge or receive a different compensation . . . than the rate specified in [its] tariff"). At least since 1915, this Court has held that the doctrine entitles a carrier to collect the rate on file with the Interstate Commerce Commission (Commission or ICC), despite a contract, negotiated between shipper and carrier, setting a lower price. See *Louisville & Nashville R. Co.* v. *Maxwell*, 237 U. S. 94, 97 (1915). The main rule to which we have adhered requires enforcement of the filed rate unless the Commission either rejects the tariff because of a formal or substantive defect, *before the rate takes effect*, 49 U. S. C. § 10762(e), or prospectively invalidates a tariff after initiating an investigation and finding the filed rate unreasonable. § 10704(b)(1). See *Keogh* v. *Chicago & Northwestern R. Co.*, 260 U. S. 156, 163 (1922) ("The legal rights of shipper as against carrier in respect to a rate are measured by the published tariff. *Unless and until suspended or set aside*, this rate is made, for all purposes,

the legal rate, as between carrier and shipper.") (emphasis added).

Under our filed rate doctrine decisions, even defective filings, including those containing substantively unlawful rates, see *Davis* v. *Portland Seed Co.,* 264 U. S. 403, 425 (1924), normally control. See *ICC* v. *American Trucking Assns., Inc.,* 467 U. S. 354, 363–364, n. 7 (1984); *Berwind-White Coal Mining Co.* v. *Chicago & Erie R. Co.,* 235 U. S. 371, 375 (1914). A shipper's remedy, when a filed rate imposes an unlawful charge, ordinarily is confined to actual damages. See *American Trucking, supra,* at 364, n. 7 (citing *Boren-Stewart Co.* v. *Atchison, T. & S. F. R. Co.,* 196 I. C. C. 120 (1933), and *Acme Peat Products, Ltd.* v. *Akron, C. & Y. R. Co.,* 277 I. C. C. 641, 644 (1950)). The ICC may not reject a tariff once accepted and in effect, *American Trucking, supra,* at 360–364, unless two conditions are satisfied: First, the Commission's action must "further a specific statutory mandate"; second, the action "must be directly and closely tied to that mandate," 467 U. S., at 367.[1]

In the 1980's, as the Court recognizes, *ante,* at 438, many carriers responded to competitive pressures by ignoring the tariffs they had filed with the ICC and negotiating with shippers rates for carriage lower than the filed rates. When carrier bankruptcies ensued, trustees asserted claims against

---

[1] *American Trucking* itself is illustrative. There, the Court upheld the ICC's authority to reject effective tariffs to deter violations of "rate bureau agreements." Under such agreements, carriers may submit collective rates to the Commission without risking antitrust liability, provided the agreements conform to specific guidelines set forth in 49 U. S. C. § 10706(b)(3). Reasoning that Congress intended the Commission to "play a key role in holding carriers to the § 10706(b)(3) guidelines," and that the nullification in question "is directly aimed at ensuring that motor carriers comply with the [statutory] guidelines," the Court held the ICC's action permissible. 467 U. S., at 369, 370. In so holding, the Court stressed that its "concern over the harshness" of the remedy "is lessened by the significant steps the Commission has taken to ensure that the penalty will not be imposed unfairly." *Id.,* at 370.

shippers for the difference between the filed rates and the negotiated rates. Reacting to these claims, the Commission refused to enforce filed rates when it appeared inequitable to exact from the shipper more than the negotiated lower price. In *Maislin Industries, U. S., Inc.* v. *Primary Steel, Inc.*, 497 U. S. 116 (1990), this Court held the ICC's nonenforcement policy inconsistent with the Act, explaining:

> "[T]he filed rate doctrine . . . forbids as discriminatory the secret negotiation and collection of rates lower than the filed rate. By refusing to order collection of the filed rate solely because the parties had agreed to a lower rate, the ICC has permitted the very price discrimination that the Act by its terms seeks to prevent." *Id.*, at 130 (citation omitted).

Invoking the filed rate doctrine and case law elaborating on it, petitioner Security Services seeks to recover undercharges for shipments its predecessor, Riss International, made between November 1986 and December 1989. During the period for which recovery is sought, the ICC followed the policy later declared unlawful in *Maislin, i. e.*, the Commission routinely refused to order collection of the filed rate where the parties had agreed upon a lower rate. Newly professing strict adherence to the filed rate doctrine, the ICC now contends it may nonetheless void a carrier's tariff, though valid when filed, and uphold, in place of the filed rate, "secret" contract rates of the kind held invalid in *Maislin.* The ICC asserts it may do so for this reason: The carrier allowed a power of attorney to the Household Goods Carriers' Bureau (HGCB) to lapse and neglected to pay a nominal annual fee to maintain its membership participation in HGCB's Mileage Guide.[2] The Court upholds the ICC's position, describing the carrier's tariff as "lack[ing] an essential element," *ante*, at 440; "a carrier employing distance rates without purporting to be bound by stated distances," the

---

[2] The fee was approximately $83. Tr. of Oral Arg. 10.

Court reasons, "would be just as well placed to discriminate among shippers by measuring with rubber instruments as it would be by charging shippers for a stated distance at mutable rates per mile." *Ibid.;* see also *ante,* at 443 ("We are dealing . . . with an incomplete tariff insufficient to support a reliable calculation of charges.").

It is difficult to regard the Commission's approach, and the Court's approval of it, as anything other than an end-run around the filed rate doctrine so recently and firmly upheld in *Maislin.* For the distances put forward in the tariff at issue are not genuinely in doubt. On the contrary, Riss' tariff explicitly incorporated the mileage figures from HGCB's Mileage Guide. A "close inspection of [HGCB's tariff supplement] might have raised some uncertainty in a shipper's mind about the propriety of [Riss'] reference to the Guide [Riss not having paid its dues], but not any uncertainty over the rate." *Overland Express, Inc.* v. *ICC,* 996 F. 2d 356, 361 (CADC 1993) (Silberman, J.), cert. pending, No. 93–883. As crisply stated in *Brizendine* v. *Cotter & Co.,* 4 F. 3d 457, 463–464 (CA7 1993) (Flaum, J.), cert. pending, No. 93–1129:

> "[S]urely [the carrier's] tariff provided sufficient information about its rates to give notice to its customers about the price of shipping. Any shipper who consulted [the carrier's] tariff would find the rate per mile and would know where to look—namely, to another tariff on file with the ICC—to determine the distance. . . . [T]he only way a curious shipper would ever know that [the carrier] failed to submit a power of attorney to HGCB would be if it looked up [the] filed rate; saw that the tariff refers to HGCB's mileage guide; inspected the mileage guide; noticed that page two of the guide states that it applies only to participating carriers listed in a supplement; turned to the supplement; and discovered that [the carrier's] name was missing."

Were the Commission in fact set on adherence to the filed rate doctrine, carriers like Riss could employ no "rubber instruments." Riss' tariff clearly said that the carrier incorporated the distances in HGCB's guide. The Commission could hold Riss to that representation, while imposing a sanction for the HGCB membership lapse that did not negate the filed rate. As Judge Flaum stated in *Brizendine:*

> "Under the filed rate doctrine, even tariffs that contain substantively unlawful rates or violate ICC filing rules are not nullities. The shipper must pay the rate on file, and may then sue for the harm, if any, caused by the tariff's unlawfulness or irregularity. The enforceability of published rates, however defective, discourages the parties (especially shippers, who may face undercharge suits later) from bargaining for other prices." 4 F. 3d, at 463 (citations and footnote omitted).

The Court attempts to justify the Commission's application of 49 CFR § 1312.4(d) (1993) as a "void-for-nonparticipation" rule by equating that rule to a tariff's expiration date. *Ante,* at 441–442. But *American Trucking* held that the Commission generally lacks authority to reject a tariff "once that tariff has gone into effect." 467 U. S., at 360; see *id.,* at 363, n. 7; *Brizendine, supra,* at 463 (*American Trucking* "makes clear that a carrier's submitted rate becomes the legal, governing rate when the ICC accepts it."). As Judge Silberman explained in *Overland Express:*

> "A regulation that purports to make a tariff[, once effective,] 'void' or 'ineffective' if a carrier fails to follow a procedural rule, . . . does not [escape] *American Trucking*'s holding. The Commission is restricted whenever it attempts to invalidate (or alter the past effects of) a tariff after [the tariff's effective date]. Otherwise, shippers and carriers could not rely confidently on the rate on file with the Commission, and . . . the filed rate doctrine would be undermined." 996 F. 2d, at 359–360.

Nor does the void-for-nonparticipation rule fit within the limited exception described in *American Trucking* for actions that directly and closely "further a specific statutory mandate," 467 U. S., at 367. The Commission says that its rule advances the ICC's "mandate to determine the information that is required to be disclosed in a tariff" to "ensure that tariffs reveal the applicable rates." Brief for United States et al. as *Amici Curiae* 24 (citing 49 U. S. C. §§ 10762(a)(1) and (b)(2)).[3] But as the Seventh Circuit observed:

> "[I]t is difficult to see how failure to [maintain in effect] a power of attorney [with the HGCB] would adversely affect the uniformity of pricing. The true purpose of the participation rule may be the facilitation of the ICC's ability to monitor the shipping market. Requiring that every publisher of a tariff list all the other carriers that have also signed onto that tariff enables the ICC to see, at a glance, how many carriers' rates are being controlled by a single tariff. Publishing that list provides no new information that is not available by inspecting each carrier's tariff individually—it simply collects it in one convenient place." *Brizendine, supra,* at 464.

Even if the Commission's action here furthered a statutory mandate, voiding a tariff after its effective date would not "be directly and closely tied to that mandate" under *American Trucking.* 467 U. S., at 367. Nullification of a rate can be an extremely harsh remedy, for it "renders the tariff void *ab initio.* As a result, whatever tariff was in effect prior to the adoption of the rejected rate becomes the applicable tar-

---

[3] Subsection 10762(a)(1) states that "[t]he Commission may prescribe other information that motor common carriers shall include in their tariffs"; subsection (b)(2) provides that "[t]he carriers that are parties to a joint tariff, other than the carrier filing it, must file a concurrence or acceptance of the tariff with the Commission but are not required to file a copy of the tariff."

iff for the [relevant] period." *Id.*, at 358 (citation omitted); *id.*, at 361.[4]   Accordingly, when the Court upheld the Commission's action in *American Trucking* as "directly and closely" tailored to a specific statutory mandate, see n. 1, *supra*, it stressed that other less drastic remedies, like actual damages, would have been ineffective checks.   See 467 U. S., at 369–370.   Here, by contrast, there is no suggestion that relief of another kind would not do to check any cognizable injury to shippers or mileage guide publishers. See *Overland Express, supra*, at 362 ("[I]f shippers or mileage guide publishers were to show that they were injured, damages presumably would be adequate to remedy the injury."); see also *Brizendine, supra*, at 465.

\*     \*     \*

It may be that "the Court stumbled badly in *Maislin Industries*."   See *ante*, at 444 (STEVENS, J., concurring).   But the way to correct that error, if error it was, is to overrule the unsatisfactory precedent, not to feign fidelity to it while avoiding its essential meaning.

For the reasons stated here, and more fully developed in *Brizendine* and *Overland Express*, I respectfully dissent.

---

[4] Ironically, the Court's theory in this case—that Riss' tariff was valid and effective until its participation in the HGCB Mileage Guide lapsed, see *ante*, at 442—should result in application of Riss' "prior" effective tariff, *i. e.*, the *same* tariff, and not the contract rate, as the Court and the Commission assume.