**EAST COAST INTERMODAL SYSTEMS, INC., a foreign authorized corporation, Plaintiff,**

v.

**SEA–BARGE GROUP, INC., a Florida corporation, Defendant.**

No. 93–0753–CIV.

United States District Court, S.D. Florida.

June 16, 1994.

Gail Scopinich, Rosenfeld, Stein & Sugerman, North Miami Beach, FL, for plaintiff.

Timothy J. Armstrong, Armstrong & Mejer, P.A., Coral Gables, FL, for defendant.

### MEMORANDUM OPINION CONTAINING FINDINGS OF FACT AND CONCLUSIONS OF LAW

ARONOVITZ, District Judge.

THIS CAUSE was tried before the Court without a jury on October 19, 1993. The Court has carefully considered all of the testimony and exhibits offered by the parties at trial, the entire record herein and all memoranda of law submitted by the parties. Having done so, and being otherwise fully advised in the premises, the Court herewith renders this opinion containing Findings of Fact and Conclusions of Law in accordance with Rule 52(a) of the Federal Rules of Civil Procedure.

#### Nature of the Case

This case presents the question of whether a carrier in bankruptcy can recover undercharges pursuant to the carrier's filed tariff that refers to a mileage guide in which, under the regulations of the Interstate Commerce Commission ("ICC"), the carrier did not legally participate.

■ Plaintiff East Coast Intermodal Systems, Inc. ("East Coast"), the debtor in possession, seeks to recover from Defendant Marine Transportation Services Sea–Barge Group, Inc. ("Sea–Barge") undercharges in the amount of $21,415.55 for transportation services performed by East Coast. East Coast premises its case on the filed rate doctrine, which, as articulated by the Supreme Court of the United States in *Maislin Industries, U.S., Inc. v. Primary Steel, Inc.,* 497 U.S. 116, 110 S.Ct. 2759, 111 L.Ed.2d 94 (1990), requires that only the tariff duly filed

with the ICC governs the billing of shipments by common carriers. Under the doctrine, shippers must pay the rate that the common carrier has filed with the ICC, regardless of any separately negotiated rate. *Id.* at 123, 110 S.Ct. at 2766. The purpose of the filed rate doctrine is "to ensure that rates are both reasonable and nondiscriminatory." *Id.* at 119, 110 S.Ct. at 2762.

East Coast contends that under the file rate doctrine, the applicable tariff rate was the rate set forth in its tariff on file with the ICC. Sea–Barge disagrees and argues that East Coast's tariff is void as a matter of law because the tariff refers to and relies on another tariff to which East Coast was not a formal participant. Sea–Barge maintains that under these circumstances, the rates in East Coast's invalid tariff cannot be applied to calculate the asserted undercharges and thus, the undercharges sought have no legal basis.

This Court has federal jurisdiction for this action pursuant to 28 U.S.C.A. § 1331 and § 1337. Venue is appropriate pursuant to 28 U.S.C. § 1400. The Interstate Commerce Act, 49 U.S.C.A. §§ 10101, *et seq.*, applies to this action.

### Findings of Fact

1. Plaintiff East Coast is a foreign corporation authorized to transact business in the state of Florida. East Coast has engaged in common carriage by truck since 1984, and is regulated by the ICC.

2. Defendant Sea–Barge is a Delaware corporation authorized to transact business in the state of Florida. It maintains its principal place of business in Dade County, Florida. At all material times, Sea–Barge has engaged in common carriage by water. Sea–Barge is regulated by the ICC in domestic commerce and by the Federal Maritime Commission in foreign commerce.

3. On or about July 1, 1987, A.M. Bramowicz, East Coast's operations manager, executed a Concurrence[1] with Sea–Barge. Patrick Grassi, East Coast's secretary, at-

tested. Pursuant to the Concurrence, East Coast participated with Sea–Barge in intermodal transportation, which concerned shipments of cargo between Florida port cities and East Coast terminals located in Florida. No evidence was adduced at trial showing that East Coast delivered a notice of revocation of the Concurrence to Sea–Barge.

4. During the time period 1988 through 1990, East Coast provided freight services to Sea–Barge. With respect to each transaction, East Coast billed Sea–Barge for its services pursuant to the Concurrence and their negotiated rates. Sea–Barge paid all invoices submitted by East Coast.

5. On March 15, 1991, East Coast filed for relief under Chapter 11 of the United States Bankruptcy Code. Subsequently, East Coast's Comptroller, Murray Mieseles ("Mieseles"), and an outside accountant reviewed and recalculated all of East Coast's billings, including those previously submitted to and paid by Sea–Barge. Mieseles and the accountant calculated the amount due for the past services rendered to Sea–Barge according to the tariff East Coast had on file with the ICC at the time the services were performed.

6. By comparing the amounts East Coast had originally invoiced its freight services to Sea–Barge with the amounts that would have been invoiced according to East Coast's filed tariff, Mieseles and the accountant determined that East Coast had undercharged Sea–Barge in the amount of $21,415.55. On or about January 14, 1993, Mieseles sent Sea–Barge a "Statement of Past Due Account" for the amount of $21,415.55. Prior to January 14, 1993, East Coast had not sent Sea–Barge any such statement nor had it indicated whatsoever to Sea–Barge that there was a balance due to East Coast for freight services rendered.

7. Upon receipt of the Statement of Past Due Account, Sea–Barge objected and refused to pay any of the alleged undercharges. It asserted that East Coast's original billings

---

1. A "concurrence" is a document used to show that one carrier has agreed to participate in joint rates or provisions published in a tariff filed by another carrier or agent. 49 C.F.R. § 1310.-10(b)(1).

were valid negotiated rates comporting with the Concurrence.

8. Supplement 8 of East Coast's tariff on file with the ICC provides that it is governed by the Household Goods Carrier's Bureau Mileage Guide No. 13, ICC HGB 100B (the "HGB Mileage Guide tariff" or the "Mileage Guide"). It specifically states, in pertinent part, the following:

### GOVERNING PUBLICATIONS

Except as otherwise provided herein this tariff is governed by the following publications, supplements thereto or re-issues thereof: Household Goods Carrier's Bureau Mileage Guide No. 13, ICC HGB 100B East Coast Intermodal Systems, Inc., ICC ECIS No. 100.

9. The HGB Mileage Guide tariff specifies (1) the distance in miles between various points of origin and destination, and (2) the carriers who are participants in the guide. East Coast is not listed as a participant in the HGB Mileage Guide tariff.

10. East Coast has produced no direct evidence showing that it executed a power of attorney or a concurrence permitting it to participate in the HGB Mileage Guide tariff.

### Conclusions of Law

1. The first step in any claim for undercharges is the determination of the applicable filed rate. *Carriers Traffic Service v. Toastmaster, Inc.*, 707 F.Supp. 1498, 1505 (N.D.Ill. 1988). East Coast asserts that its tariff is the applicable filed rate by which to determine the undercharges.

2. Under ICC regulations, a tariff consists of two parts: (1) the dollar rate that a carrier charges per mile, and (2) the distance in miles between various points of origin and destination. 49 C.F.R. § 1312.30 (1992); *Security Services, Inc. v. Kmart Corp.*, 996 F.2d 1516, 1520 (3d Cir.1993), *affirmed,* —— U.S. ——, 114 S.Ct. 1702, 128 L.Ed.2d 433 (1994). East Coast's tariff specified only the first required component, the dollar rate it

would charge per mile. As permitted by ICC regulations, however, East Coast's tariff referred to the HGB Mileage Guide tariff to provide the second component.

3. The HGB Mileage Guide, officially on file with the ICC according to 49 C.F.R. § 1312.30(c)(4), is deemed a tariff in its own right. *Freightcor Services, Inc. v. Vitro Packaging, Inc.*, 969 F.2d 1563, 1566 (5th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 979, 122 L.Ed.2d 133 (1993); *Security Services,* 996 F.2d at 1521.

4. Under 49 C.F.R. § 1312.27(e), a carrier must participate in any governing tariff that it references in its publication. To participate in a tariff issued in the name of another entity, as East Coast purports to have done in the HGB Mileage Guide tariff, the carrier must execute a concurrence or a power of attorney pursuant to § 1312.4(d).[2] Section 1312.4(d) also provides that absent an effective concurrence or power of attorney, a tariff reference is void as a matter of law. No evidence was presented at trial showing that East Coast executed either a concurrence or a power of attorney so as to participate in the HGB Mileage Guide tariff.

■ 5. Thus, the heart of this action is whether a carrier in bankruptcy can recover undercharges pursuant to the carrier's filed tariff that refers to a mileage guide in which the carrier did not legally participate. The recent decision by the Supreme Court in *Security Services, Inc. v. Kmart Corp.,* —— U.S. ——, 114 S.Ct. 1702, 128 L.Ed.2d 433 (1994), is controlling and dispositive as to this issue.

6. The relevant facts of *Security Services* are very similar to the facts of this case. *Security Services* involved a carrier which transported goods for the defendant and was paid in full for its services at a negotiated contract rate. *Security Services,* —— U.S. at ——, 114 S.Ct. at 1703. It subsequently filed a Chapter 11 bankruptcy petition and while in bankruptcy, billed the defendant for undercharges it was allegedly owed, based on

---

**2.** Section 1312.4(d) provides in pertinent part: a carrier may not participate in a tariff issued in the name of another carrier or an agent unless a power of attorney or concurrence has

been executed. Absent effective concurrences or powers of attorney, tariffs are void as a matter of law.
49 C.F.R. § 1312.4(d).

the difference between the contract rate paid and the tariff rates that the carrier had on file with the ICC. *Id.* Like East Coast's tariff, the *Security Services* carrier's tariff on file with the ICC referred to the HGB Mileage Guide tariff for the distance component of its own tariff. *Id.* Although the carrier had originally participated in the HGB Mileage Guide tariff, said participation was canceled after it failed to renew. *Id.* The transactions with the defendant occurred after the cancellation, when it was no longer a participant in the HGB Mileage Guide tariff. *Id.* — U.S. at ——, 114 S.Ct. at 1709.

7. Under these circumstances, the Supreme Court ruled that the carrier's own tariff was void. The carrier therefore was not allowed to collect undercharges based on its void tariff:

> When a carrier relies on a mileage guide filed by another carrier or agent, under ICC regulations the carrier must participate in the guide by maintaining a power of attorney; when a carrier fails to maintain its power of attorney and its participation is canceled by its former agent's filing of an appropriate tariff, the carrier's tariff is void.

*Security Services,* at ——, 114 S.Ct. at 1710. In contrast to *Security Services,* there is no evidence in this case that East Coast had ever "participated" in the HGB Mileage Guide tariff as required under 49 C.F.R. § 1312.4(d).

8. The Supreme Court in *Security Services* concluded that:

> Trustees in bankruptcy and debtors in possession may rely on the filed rate doctrine to collect for undercharges, [citation to *Maislin, supra* ], but *they may not collect for undercharges based on filed, but void, rates.*

*Security Services,* at ——, 114 S.Ct. at 1710. (emphasis added).[3]

9. This Court is bound by the rulings of the Supreme Court. Accordingly, based on the recently decided *Security Services* opinion, this Court holds that East Coast's tariff, upon which its claim for undercharges is based, is void as a matter of law for failure to participate in HGB Mileage Guide tariff. East Coast's action to recover undercharges based upon its void tariff, therefore, must fail as a matter of law.

10. Accordingly, pursuant to the aforegoing, judgment shall be entered in favor of the Defendant, Sea–Barge Group, Inc. Sea–Barge shall be paid its costs by East Coast upon the filing of a Bill of Costs. *See* Rule 54 of the Federal Rules of Civil Procedure. The amount of the costs awarded will be determined by the Clerk of Court.

11. Defendant Sea–Barge has requested an award of reasonable attorneys' fees pursuant to Fla.Stat. § 57.105. *See* Defendant's Answer and Affirmative Defenses at pages 3 and 4. The Court reserves ruling thereon and hereby directs Sea–Barge to submit a memorandum of law as to whether an award of attorneys' fees should be awarded under Florida state law or federal law. Said memorandum of law shall be filed within fifteen (15) days from the date of this opinion. Plaintiff East Coast shall file a response fifteen days (15) days thereafter.

12. In light of the foregoing ruling, Sea–Barge's motion for a directed verdict is hereby DENIED AS MOOT.

DONE AND ORDERED.

---

**3.** Prior to this Supreme Court decision, there was a split in the authorities as to the issue at bar. The ICC and the Courts of Appeal for the Third, Fifth and Eighth Circuits ruled that where a carrier failed to legally participate in a mileage guide which is referred to in its own tariff, its own tariff is void by operation of law and therefore, its undercharge claims must fail. *See, e.g., Berger and Company,* ICC Decision No. 40731 (August 2, 1993); *7/24 Freight Sales, Inc. v. Atlantis Express, Inc.,* ICC Decision No. 40477 (April 27, 1992); *Ashland Chemical Co.,* ICC Decision No. 40336 (April 27, 1992); *Security Services, supra; Freightcor Services, supra; Atlan-* *tis Express, Inc. v. Associated Wholesale Grocers, Inc.,* 989 F.2d 281 (8th Cir.1993). The Courts of Appeal for the Seventh and District of Columbia Circuits, however, had permitted a carrier to collect undercharges from a shipper pursuant to its own tariff that referenced the HGB Mileage Guide tariff, even though the carrier did not formally participate in the mileage guide. *See Brizendine v. Cotter & Co.,* 4 F.3d 457 (7th Cir. 1993), *vacated and remanded,* — U.S. ——, 114 S.Ct. 2095, 128 L.Ed.2d 658 (1994); *Overland Express, Inc. v. ICC,* 996 F.2d 356 (D.C.Cir. 1993), *vacated and remanded,* — U.S. ——, 114 S.Ct. 2095, 128 L.Ed.2d 658 (1994).