**George P. BAKER et al., Plaintiffs,**

v.

**PROLERIZED CHICAGO CORPORATION, Defendant.**

**No. 71 C 301.**

United States District Court,
N. D. Illinois, E. D.

Dec. 21, 1971.

---

Edward R. Gustafson, Chicago, Ill., for plaintiff.

Glenn Schwartz, Lord, Bissell & Brook, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

WILL, District Judge.

■ The trustees of the bankrupt Penn Central Transportation Company (hereinafter "Penn Central") bring this action seeking to recover charges for alleged interior switching or intraplant switching performed by the railroad at defendant Prolerized's request at Prolerized's plant in Chicago between February 7, 1970, and August 18, 1970. Penn Central, being a common carrier railroad subject to the provisions of the Interstate Commerce Act, 49 U.S.C. § 1 et seq., seeks to recover on the basis of its Freight Tariff 40105, issued December 4, 1968, effective January 11, 1969, or, in the alternative, on the theory of *quantum meruit* or implied contract. Defendant has moved for summary judgment contending that Penn Central cannot recover on its tariff since it has not strictly complied with that tariff and no railroad can recover for services unless the services are performed pursuant to its tariff. Summary judgment will be granted for the defendant.

As a common carrier railroad subject to the provisions of the Interstate Commerce Act, 49 U.S.C. § 1 et seq., Penn Central must publish its schedule of rates, fares and charges pursuant to 49 U.S.C. § 6. Item 390 of Penn Central's Freight Tariff 40105, issued December 4, 1968, effective January 11, 1969, is the tariff under which recovery is sought in this action. It provides:

When a shipper or receiver desires any movement made from one location to another location of an industry, such movement will be made for $18.-26 per loaded car, regardless of weight, including the handling of the empty, *upon written request on the nearest Agent of the Company*. When a shipper or receiver desires any movement made of an empty car from one location to another location of an industry, such movement will be made for $18.26 per movement, *upon written request on the nearest Agent of*

*This Company.* . . . (Emphasis supplied.)

As the above italicizing indicates, the tariff requires written request by the shipper for services such as those rendered in this case. It has been stipulated by the parties that defendant Prolerized never made any written request for any of the intraplant switching here involved nor did Penn Central ever request such writings. The first issue then for the court to determine is whether recovery for services contemplated by the tariff can be had under the tariff when the requirement for written request for those services by the shipper has not been complied with.

■ The law is clear that rigid adherence to the tariff is required in order for a carrier to recover under its provisions. Davis v. Henderson, 266 U.S. 92, 45 S.Ct. 24, 69 L.Ed. 182 (1924); Empire Box Corp. v. Delaware, L. & W. R. Co., 171 F.2d 389 (2d Cir. 1948); Eastern Wine Corp. v. New York Central R. Co., 355 F.2d 30 (2d Cir. 1966); North Coast Mfg. Corp. v. Union Pacific R. Co., 185 F.Supp. 287 (D.Or.1960); Illinois Central R. Co. v. Ready-Mix Concrete, Inc., 323 F.Supp. 609 (E.D.La. 1971). *See also,* Campbell Construction Co. v. L. C. & S. E. Ry. Co., 95 I.C.C. 603; Western Bridge & Construction Co. v. St. L.–S. F. Ry. Co., 118 I.C.C. 607; Colonial Lbr. Co. v. Reading Co., 291 I.C.C. 523; Chagen v. Alabama Southern R. Co., 298 I.C.C. 256.

Plaintiffs argue that all the above cited cases are factually distinguishable from the instant case, and that despite bald statements in these cases to the effect that rigid adherence to the letter of the tariff is required for either the carrier or the shipper to recover, each case can be limited to its facts. Most of the cases cited above involve demurrage charges—i. e., charges for the detention of a railroad car beyond a stipulated date. In all demurrage cases, written notice from the carrier to the shipper to the effect that cars are being held by the shipper and that charges will accrue after a specified date is required. Plaintiffs contend that this written notice is a condition precedent requiring an affirmative act by the carrier before it can recover. In the instant case, they argue that the affirmative act is required not of the carrier but of the shipper, and therefore the shipper may waive this requirement without depriving the carrier of recovery for services actually rendered which, they allege, were orally requested by the defendant.

■ While it is true that this factual distinction does exist between the cited cases and the instant case, we find that it does not outweigh the statements in the cases requiring rigid adherence to the tariff and the logic underlying these statements. The Interstate Commerce Act, 49 U.S.C. § 1, et seq., was passed in 1887 in response to general public indignation and disgust over the railroads' abuse of their monopoly position and in response to the invalidation of state attempts to regulate the railroads by the Supreme Court in Wabash, St. L. & P. R. v. Illinois, 118 U.S. 557, 7 S.Ct. 4, 30 L.Ed. 244 (1886). *See generally,* Huntington, "The Marasmus of the ICC," 61 Yale L.J. 467 (1952). The intent of Congress in requiring railroads to publish tariffs and to charge only according to their provisions is clear. Abuses in charges and billing could only be remedied if the railroads were required to adhere to pre-existing schedules. Equally explicit in the intent of Congress is a desire to seek uniformity of treatment to all shippers. *See,* Kansas City Southern R. Co. v. C. H. Albers Commission Co., 223 U.S. 573, 32 S.Ct. 316, 56 L.Ed. 556 (1912); United States v. Champlin Refining Co., 341 U.S. 290, 71 S.Ct. 715, 95 L.Ed. 949 (1951).

In the instant case, strict adherence to the published tariff furthers the underlying purpose of the Interstate Commerce Act. Requiring a shipper to formally request a particular service through writing is a reasonable method with which to insure that no phantom charges or possible kickbacks from nonperformed services will materialize. To

allow a railroad to collect for services for which there is no tangible evidence of performance or request is to encourage manipulations of charges which the Interstate Commerce Act sought to alleviate. This is not to say that the tariff is a foolproof method. On the contrary, it too is subject to abuse, but the possibilities for abuse are minimized or, at least, lessened by requiring strict adherence to the letter of the tariff as published. Accordingly, since its published tariff has not been complied with, the railroad carrier cannot recover under its provisions.

Plaintiffs' alternative ground for relief in the complaint is upon the theory of *quantum meruit* or implied contract. For the reasons stated above in the discussion of the purposes behind the Interstate Commerce Act, we hold that a railroad may not recover for services rendered except on the basis of its published tariff.

██ In its memorandum in opposition to defendant's motion for summary judgment, plaintiff has suggested with respect to this *quantum meruit* argument that the Court remand the controversy to the Interstate Commerce Commission to determine a reasonable charge for the services that the railroad has performed in this case. This would be a wholly fruitless exercise for two reasons. First, a railroad subject to the provisions of the Interstate Commerce Act may not recover for services except as provided for in their tariff. Second, the ICC has approved rates for the very services which have been performed in the instant case, i. e., the rates published in the tariff. Therefore, plaintiffs' request to remand the case to the ICC will be denied.

The cases cited by the plaintiff to support the proposition that railroads can recover reasonable charges for services performed which are within the scope of a valid tariff are inapposite. All these cases are administrative decisions, and all involved situations where there was no applicable tariff provision.

*See,* Memphis Freight Bureau v. K. C. S. Ry. Co., 17 I.C.C. 90; Hackney Bros. Body Co. v. N. Y. Central R. Co., 266 I. C.C. 795; Carnation Co. v. Southern P. Co., 269 I.C.C. 470; Moffatt & Edwards v. St. L. S. W. Ry. Co. of Texas, 270 I. C.C. 220; Natl. Trucking & Storage Co., Inc. v. Penna. R. Co., 294 I.C.C. 605. For this reason, we find them to be inapplicable and unpersuasive in the instant case.

In summary, since a railroad subject to the terms of the Interstate Commerce Act cannot recover for services rendered where a valid tariff is in force except under the terms of that tariff, and since such a railroad may not recover under its tariff unless its terms have been rigidly adhered to, and since the plaintiff has not provided these services with a strict adherence to the tariff, the plaintiff may not recover and summary judgment must be entered for the defendant.

An appropriate order will enter.