**CSX TRANSPORTATION, INC., Plaintiff,**

v.

**The CITY OF PENSACOLA, FLORIDA d/b/a The Port of Pensacola, Defendant.**

**No. 94–30236–RV.**

United States District Court, N.D. Florida, Pensacola Division.

Jan. 5, 1995.

---

Larry Hill, Moore, Hill & Westmoreland, Pensacola, FL, for plaintiff.

Don J. Caton, City of Pensacola, Office of the City Atty., Pensacola, FL, Stephen C. Herman, pro hac vice, Belnap, Spencer, McFarland & Herman, Chicago, IL, for defendant.

## ORDER

VINSON, District Judge.

Pending is the defendant's motion to dismiss Counts II and III of the complaint for failure to state a claim upon which relief can be granted. (doc. 7).

## I. BACKGROUND

The following factual allegations are all contained in the complaint. Defendant City of Pensacola ("City") owns and operates the Port of Pensacola ("the Port"). Plaintiff CSX Transportation, Inc. ("CSX") is a rail common carrier. In the course of its business, CSX transports loaded railcars to the Port for unloading and subsequent transfer of the goods contained in the railcars to ocean going vessels.

CSX is subject to the provisions of the Interstate Commerce Act [49 U.S.C. § 10101 *et. seq.* ]. Pursuant to the provisions of that Act, CSX has published and filed Tariff CSXT 8100 with the Interstate Commerce Commission ("I.C.C."). Among other things, Tariff CSXT 8100 includes rates for demurrage. The complaint alleges that City is obligated to pay demurrage for the time it delayed railcars either actually or constructively delivered to the Port.

CSX filed a three-count complaint against the City for railcars either held or not accepted during the period January through July of 1993. Count I purports to state a claim for demurrage pursuant to the rate stated in CSX's filed tariff. Count II is based on a theory of *quantum meruit,* and seeks damages for the value the Port alleged received from the use of railcars it failed to return in a timely manner. Count III is based on a theory of quasi-contract, and seeks damages for the losses CSX allegedly suffered when it was forced to make room at its facilities for railcars which the Port had refused to accept, and for the loss of use of railcars which the Port detained for an excessive period. The City has moved to dismiss Counts II and III of the complaint.

## II. ANALYSIS

### A. *Motion To Dismiss.*

▇ A motion to dismiss for failure to state a claim cannot be granted unless the complaint alleges no set of facts, which, if proved, would entitle the plaintiff to relief. *See, e.g., Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90, 96 (1974); *Blackston v. State of Alabama,* 30 F.3d 117, 120 (11th Cir.1994). On a motion to dismiss, the court must accept all the alleged facts as true and find all inferences from those facts in the light most favorable to the plaintiff. *See, e.g., Cruz v. Beto,* 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972); *Hunnings v. Texaco, Inc.,* 29 F.3d 1480, 1483 (11th Cir.1994).

### B. *Counts II and III.*

▇ Demurrage is the fee a railroad charges for the undue detention of its railcars. As a regulated common carrier, CSX is required to file a tariff schedule with the I.C.C. in which all of its freight rates and miscellaneous charges are specified. 49 U.S.C. § 10762(a)(1). A carrier may not collect at any different rate for a service listed in its filed tariff, even with the consent of the other party. 49 U.S.C. § 10761(a). *See Maislin Industries, U.S. Inc., v. Primary Steel, Inc.,* 497 U.S. 116, 120, 110 S.Ct. 2759, 2762–63, 111 L.Ed.2d 94, 104 (1990). Deviation from the published rate may result in the imposition of civil or criminal sanctions on the carrier or the shipper. 49 U.S.C. § 11902–11904. This requirement that a carrier strictly adhere to its published rates has come to be known as the "filed rate doctrine."

CSX has alleged in its complaint that it has filed a tariff schedule with the I.C.C. which includes a demurrage charge. The City contends that under the filed rate doctrine, CSX must collect pursuant to the published tariff or not at all. The City argues that a carrier cannot collect for a service contained within its tariff under an alternative legal theory as a matter of law. CSX contends that if it cannot collect pursuant to its tariff, "it would be a clear injustice" if it the railroad was not compensated for its damages on some other basis.

The parties have cited only two district court cases, and both are over twenty years

old. *Southern Pacific Transportation Co. v. Matson Navigation Co.*, 383 F.Supp. 154 (N.D.Cal.1974); *Baker v. Prolerized Chicago Corp.*, 335 F.Supp. 183 (N.D.Ill.1971). I have discovered no other reported cases on point. In both these cases, a railroad sued to recover charges pursuant to its published tariff and also asserted that if it could not collect pursuant to its tariff, then it should be able to collect on an alternative unjust enrichment or *quantum meruit* theory.

In the *Southern Pacific* case, Matson Navigation Co. ("Matson") was both a terminal operator and a common carrier by water. Southern Pacific Transportation Co. ("Southern Pacific"), a rail carrier, was scheduled to deliver railcars to Matson for unloading. Because Matson was unable to receive the railcars immediately, Matson was required to keep them in its yard. Southern Pacific sued to collect demurrage charges pursuant to the published tariff, and in the alternative if demurrage was not available, on an unjust enrichment theory. The court rejected the unjust enrichment claim because "in no meaningful sense has Matson benefitted from the 'use' of the cars. . . . The only one who could properly be said to have benefitted from the use of the cars is the shipper or the purchaser." 383 F.Supp. at 158–59. CSX attempts to distinguish this case from *Southern Pacific* on the grounds that the Port of Pensacola did allegedly benefit from the use of the railcars.

In the *Prolerized Chicago* case, the trustees of the bankrupt Penn Central Transportation Co., a rail common carrier, sued to recover for interior switching charges under the railroad's published tariff. As an alternative legal theory, the plaintiffs sought to recover its expenses in switching the railcars on the basis of *quantum meruit*. The court rejected the *quantum meruit* claim. "[A] railroad subject to the provisions of the Interstate Commerce Act may not recover for services except as provided for in their tariff." 335 F.Supp. at 186.

▮ The *Prolerized Chicago* rationale is consistent with the history and purpose of the Interstate Commerce Act. The Act was enacted to prevent discrimination and give uniformity and certainty to freight rates.

*Southern Pacific Transportation Co. v. Commercial Metals Co.*, 456 U.S. 336, 344, 102 S.Ct. 1815, 1820, 72 L.Ed.2d 114, 121 (1982); *Arizona Grocery Co. v. Atchison, Topeka & Santa Fe Railroad Co.*, 284 U.S. 370, 384, 52 S.Ct. 183, 184, 76 L.Ed. 348, 352–53 (1932). For this reason, the legal rights of the carrier and shipper in respect to the charge for a service are determined solely by the published tariff. *Maislin Industries, supra*, 497 U.S. at 126, 110 S.Ct. at 2765–66, 111 L.Ed.2d at 108; *Square D Co. v. Niagara Frontier Tariff Bureau, Inc.*, 476 U.S. 409, 416, 106 S.Ct. 1922, 1927, 90 L.Ed.2d 413, 421 (1986); *Keogh v. Chicago & Northwestern Railway Co.*, 260 U.S. 156, 163, 43 S.Ct. 47, 49, 67 L.Ed. 183, 187 (1922). The tariff is to be strictly construed, and rigid adherence to the tariff is required in order for a carrier to recover for a service within the scope of the tariff. *Davis v. Henderson*, 266 U.S. 92, 93, 45 S.Ct. 24, 24, 69 L.Ed. 182 (1922); *Eastern Wine Corp. v. New York Railroad Co.*, 355 F.2d 30, 31 (2nd Cir.1966). However, if a carrier has complied with the terms of its tariff, equitable defenses are not available to the shipper. *Security Services, Inc. v. K-Mart Corp.*, —— U.S. ——, ——, 114 S.Ct. 1702, 1706, 128 L.Ed.2d 433, 439 (1994); *Louisville & Nashville Railroad Co. v. Maxwell*, 237 U.S. 94, 97, 35 S.Ct. 494, 495, 59 L.Ed. 853, 854 (1915); *Seaboard System Railroad, Inc. v. Buckeye Cellulose Corp.*, 794 F.2d 635, 638 (11th Cir.1986). To permit a carrier to recover on some other basis, at some other rate, for a service which is included in its published tariff would defeat the purpose of the Interstate Commerce Act to guarantee uniform rates and conditions.

▮ Demurrage is intended to both compensate a rail carrier for the loss of use of its railcars and to induce prompt turnaround. "All demurrage charges have a double purpose. One is to secure compensation for the use of the car and of the track which it occupies. The other is to promote car efficiency by providing a deterrent against undue detention." *Interstate Commerce Comm. v. Oregon Pacific Industries, Inc.*, 420 U.S. 184, 189–90, 95 S.Ct. 909, 913, 43 L.Ed.2d 121, 126 (1975) (quoting *Turner, Dennis & Lowry Lumber Co. v. Chicago,*

*Milwaukee & St. Paul Railway Co.*, 271 U.S. 259, 262, 46 S.Ct. 530, 531, 70 L.Ed. 934, 938 (1926)). "Demurrage is part compensation and part penalty to secure the release of equipment and tracks." *Illinois Central Gulf Railroad Co. v. Southern Rock, Inc.*, 644 F.2d 1138, 1140 (5th Cir.1981). Demurrage is intended to remedy the type of injuries alleged by CSX.

■ Under the Interstate Commerce Act and the caselaw, CSX is required to collect for the detention of its railcars only in the manner and at the rate specified in its filed tariff. The filed rate doctrine "is undeniably strict and it obviously may work hardship in some cases, but it embodies the policy which has been adopted by Congress." *Maislin Industries, supra*, 497 U.S. at 127, 110 S.Ct. at 2766, 111 L.Ed.2d at 109 (quoting *Louisville & Nashville Railroad Co. v. Maxwell*, 237 U.S. 94, 97, 35 S.Ct. 494, 495, 59 L.Ed 853, 854 (1915)). *See also, Southern Pacific Transportation Co. v. Commercial Metals Co.*, 456 U.S. 336, 343–44, 102 S.Ct. 1815, 1820–21, 72 L.Ed.2d 114, 121 (1982). Just as a shipper may not assert equitable defenses to the collection of the tariff, a rail carrier should not be able to assert equitable legal claims to avoid strict compliance with a tariff it has formulated. The plaintiff has not cited, nor have I discovered, any reported case which has permitted a railroad to recover for a service included in its tariff on any other basis than the terms of the tariff. CSX's right to demurrage must stand or fall on its tariff, as filed with the I.C.C. Counts II and III of the complaint fail to state an actionable cause of action. Accordingly, the motion of defendant City of Pensacola to dismiss Counts II and III of the complaint is GRANTED, and they are DISMISSED, with prejudice.