**NORWEST TRANSPORTATION, INC., Plaintiff–Appellee,**

v.

**HORN'S POULTRY, INC., Defendant–Appellant.**

No. 93–3035.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 10, 1993.

Decided May 3, 1994.

Lawrence M. Liebman, Timothy F. Eddy, Eddy & Liebman, Chicago, IL, Marc A. Zellen (argued), Miller & Zellen, Bloomington, MN, for plaintiff-appellee.

David C. Nelson (argued), Dilsaver, Nelson, Winter & Black, Mattoon, IL, for defendant-appellant.

Before CUMMINGS, FRIEDMAN * and CUDAHY, Circuit Judges.

FRIEDMAN, Circuit Judge.

The Interstate Commerce Commission (Commission) approved a motor carrier's request to change its name, and directed the carrier to amend its tariffs to show its new name. The carrier failed to do so. The question is whether such failure barred the carrier from collecting from a shipper the difference between the amount mistakenly charged the shipper and the higher rates specified in its filed tariff. The district court

held that the carrier was entitled to recover the underpayments. We affirm.

## I

. In August 1987, the Commission approved the change of the name of B.J. Xpress to Norwest Trans., Inc. (Norwest). The Commission order approving the name change told the carrier that it "must amend ... (3) its tariffs of schedules to reflect the new name." The carrier did not do so.

The order also told the carrier that it must amend "(1) its insurance coverage for the protection of the public." The district court stated: "Between August, 1987 and November 1990, the ICC commenced four separate revocation of authority proceedings against Norwest for its failure to file evidence of insurance. Norwest submitted the requisite evidence of insurance and each proceeding was discontinued. No other ICC proceedings were begun against the carrier."

Between September 1989 and August 1990, Norwest carried 15 shipments for the appellant, Horn's Poultry, Inc. (Horn's), for which Norwest billed Horn's and Horn's paid $31,863.99. This was $8,242 less than the rates in the filed tariffs.

During a subsequent audit, Norwest discovered the underpayments. When Horn's refused to pay the deficiency, Norwest filed suit against Horn's in the United States District Court for the Central District of Illinois.

On cross-motions for summary judgment, the court held that Norwest could recover $8,242.81. The court stated that the issue was "whether a filed tariff is valid where the motor carrier has failed to amend the name on the tariff after a change in ownership, but the ICC has not taken any action to suspend or revoke the tariff." The court held that "[u]nless and until suspended or set aside by the Commission, the tariff is the legal rate between the shipper and carrier for all purposes, ... since Norwest/BJ Xpress' tariff had not been suspended or set aside by the ICC, it was the legal rate which Horn's is obligated to pay."

* Daniel M. Friedman, Circuit Judge for the Federal Circuit, sitting by designation.

## II

■ A. Under the "filed rate" doctrine, a carrier cannot deviate from the tariff it has filed with the Commission. *Louisville & Nashville R.R. Co. v. Maxwell,* 237 U.S. 94, 97, 35 S.Ct. 494, 495, 59 L.Ed. 853 (1915). *See Square D Co. v. Niagara Frontier Tariff Bureau, Inc.,* 476 U.S. 409, 417, 106 S.Ct. 1922, 1927, 90 L.Ed.2d 413 (1986); *Maislin Industries, U.S., Inc. v. Primary Steel, Inc.,* 497 U.S. 116, 119, 110 S.Ct. 2759, 2762, 111 L.Ed.2d 94 (1990). Almost 80 years ago, the Supreme Court stated in *Louisville:*

> Under the Interstate Commerce Act, the rate of the carrier duly filed is the only lawful charge. Deviation from it is not permitted upon any pretext.

237 U.S. at 97, 35 S.Ct. at 495.

In *Square D,* decided after the Motor Carrier Act of 1980, which "substantially deregulated the motor carrier industry in many ways" (*Maislin,* 497 U.S. at 133, 110 S.Ct. at 2769), the Court quoted the following statement from *Keogh v. Chicago & Northwestern Ry. Co.,* 260 U.S. 156, 163, 43 S.Ct. 47, 49, 67 L.Ed. 183 (1922):

> The legal rights of shipper as against carrier in respect to a rate are measured by the published tariff. Unless and until suspended or set aside, this rate is made, for all purposes, the legal rate, as between carrier and shipper. The rights as defined by the tariff cannot be barred or enlarged by either contract or tort of the carrier.... This stringent rule prevails, because otherwise the paramount purpose of Congress—prevention of unjust discrimination—might be defeated.

476 U.S. at 416–17, 106 S.Ct. at 1926–27.

■ In the present case, it is undisputed that the rate Norwest charged Horn's, and Horn's paid, was significantly less than the rate in the tariff that Norwest's predecessor had filed. It also is undisputed that that rate had not been superseded or set aside. Although that tariff had been filed by B.J. Xpress and not by Norwest, the latter was merely the new name under which the former carrier operated after the Commission had authorized the name change. Norwest, therefore, was entitled to recover from Horn's the amount necessary to bring the charges into conformity with the tariff on file with the Commission.

There is no convincing reason why a deviation from the filed rate should be sanctioned simply because Norwest failed to comply with the Commission's order to amend its tariff to show its new name. Under the statutory scheme of the Interstate Commerce Act, it is within the discretion of the Commission to determine whether to seek suspension or revocation of the tariff because of the carrier's failure to comply with the Commission's order to amend it to show the new name. 49 U.S.C. § 11701(a) ("the Commission shall take appropriate action to compel compliance with [the Interstate Commerce Act]"); *see also* 49 U.S.C. § 10925(b) ("the Commission may suspend, amend or revoke any part of a certificate, permit, or license ... for willful failure to comply with ... a regulation or order of the Commission"); *accord I.C.C. v. Am. Trucking Ass'n,* 467 U.S. 354, 365, 104 S.Ct. 2458, 2464, 81 L.Ed.2d 282 (1984) (discussing that the Commission has discretion to take actions that are legitimate, reasonable, and directly adjunct to the Commission's explicit statutory power). Indeed, such administrative action was the course the Commission followed when Norwest failed to amend its insurance coverage to reflect its new name. The Commission instituted four separate proceedings to revoke Norwest's operating authority for this deficiency, which it dismissed after Norwest submitted the requisite evidence of insurance.

The Commission's non-institution of any administrative proceedings against Norwest because of the latter's failure to amend its tariff to show its new name, left the previously filed tariff outstanding and effective, and Norwest could not deviate from the rates there set forth. The Commission's non-action did not justify Horn's refusal to pay the full tariff amount.

In *United States v. James Daniel Good Real Property,* —— U.S. ——, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993), the Supreme Court held that a government forfeiture action filed within the applicable limitations period but not in compliance with other statutory timing

requirements, was not subject to dismissal on the latter ground. The Court stated that it had held that "if a statute does not specify a consequence for noncompliance with statutory timing provisions, the federal courts will not in the ordinary course impose their own coercive sanctions." *Id.* at ——, 114 S.Ct. at 506. The Court quoted the statement in *United States v. Montalvo–Murillo,* 495 U.S. 711, 717, 110 S.Ct. 2072, 2077, 109 L.Ed.2d 720 (1990), that "[t]here is no presumption or general rule that for every duty imposed upon the court or the Government and its prosecutors there must exist some corollary punitive sanction for departures or omissions, even if negligent." *Id.*

Similar reasoning supports the conclusion that in the present case, Norwest's failure to amend its tariff to show its new name, as the Commission ordered, and the Commission's non-action to compel such amendment, did not preclude Norwest from collecting from Horn's the amount specified in the tariff.

Indeed, Horn's argument proves too much. If Horn's is correct that Norwest itself had no tariff on file that covered the services rendered to Horn's because the tariff was in the name of B.J. Xpress, then the lower-than-tariff rates Norwest charged Horn's were themselves illegal, and Norwest had no right to make or retain any charge for the service it provided. Horn's, however, makes no such argument.

B. Horn's argues that, in any event, summary judgment against it was improper because there was a disputed issue of material fact: whether the filed tariff rates "were readily ascertainable or discernible" by it. The argument apparently is that because the filed tariff was in the name of B.J. Xpress, Horn's could not readily have ascertained the tariff of Norwest when Horn's entered into the transportation arrangements with that carrier.

■ Horn's, however, makes no contention that it ever attempted but failed to ascertain the tariff that covered the shipments. In connection with this case, the Commission informed Horn's representative in response to an inquiry, that B.J. Xpress "changed its name" to Norwest and referred to the B.J. Xpress-filed-tariff that covered the charges.

If Horn's had wanted to identify the applicable tariff, it easily could have done so by making inquiry of the Commission or, perhaps, of Norwest itself. *Accord Coenco, Inc. v. Coenco Sales, Inc.,* 940 F.2d 1176, 1179 (8th Cir.1991) (discussing that simple observation or reverse engineering sufficed to find item "readily ascertainable" in trade secret context).

The judgment of the district court is affirmed.