Jeff MacLEOD, Trustee for
BGR Transportation,
Inc., Petitioner,

v.

INTERSTATE COMMERCE COMMISSION; United States of America, Respondents.

No. 93–1363.

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 8, 1994.

Decided June 6, 1995.

Rehearing and Suggestion for Rehearing In Banc Denied Aug. 9, 1995.

Robert B. Walker, Washington, DC, argued the cause for petitioner. With him on the briefs were Joseph L. Steinfeld, Jr., John T. Siegler, and Scott H. Lyon, Washington, DC.

Judith A. Albert, Atty., I.C.C., Washington, DC, argued the cause for respondents. With her on the brief were Henri F. Rush, Gen. Counsel, Ellen D. Hanson, Deputy Gen. Counsel, I.C.C., Anne K. Bingaman, Asst. Atty. Gen., Robert B. Nicholson, and John P. Fonte, Attys., U.S. Dept. of Justice, Washington, DC.

Before WALD, GINSBURG, and TATEL, Circuit Judges.

GINSBURG, Circuit Judge:

Jeff MacLeod, as trustee in bankruptcy for the BGR Transportation Company, Inc., a defunct interstate motor carrier, petitions for review of an Interstate Commerce Commission order denying BGR's application retroactively to adopt the tariffs on file under the carrier's prior name. *Appeal of Rejection of Adoption Publications—BGR Transportation Co., Inc.,* 9 I.C.C.2d 771 (1993) (*ICC Decision*). MacLeod contends both that the order violates the filed rate doctrine and that the Commission's refusal to grant a waiver of its adoption regulations was arbitrary and capricious. Finding no merit in either of those claims, we deny the petition.

## I. BACKGROUND

Bobby C. Reeves d/b/a BGR Transportation Company (Reeves), an interstate motor carrier, published its rates in tariffs filed with the Commission pursuant to 49 U.S.C. § 10762(a)(1). In February 1988 the Commission approved Reeves's application to change its name, apparently in order to reflect its incorporation, to BGR Transportation Company, Inc., and ordered it to "amend its tariffs ... to reflect the new name." *Bobby C. Reeves d/b/a BGR Transportation Company Reentitled BGR Transportation Co.,* No. MC–186344 (ICC served February 26, 1988); *see* 49 C.F.R. § 1312.20(a)(2) ("When a carrier's name is lawfully changed ... tariff adjustments must be made"). Nonetheless, BGR failed to amend the Reeves tariffs to reflect the name change.

In October 1991 BGR sought liquidation under Chapter 7 of the Bankruptcy Code and Mr. MacLeod was appointed trustee. In that capacity, MacLeod sued BGR's former shippers to recover the difference between what BGR had charged them and what it would have charged them had it applied the tariffs filed by Reeves prior to the name change. The shippers defended on the ground that BGR had never adopted those tariffs.

MacLeod thereupon (in January 1993) filed with the Commission an "adoption notice" and "adoption supplements" in which BGR sought to adopt Reeves's tariffs retroactively

to the date of the name change (February 1988). In a published opinion rejecting the proposed adoptions, the Commission acknowledged that under its regulations a carrier may adopt a tariff retroactively to the date of its name change, 49 C.F.R. § 1312.20(h) (1993), *ICC Decision,* 9 I.C.C.2d at 771, but pointed out that its regulations also require that the adoption papers be filed "promptly," 49 C.F.R. § 1312.20(h) (1993), and added that "[a]doption [papers] filed 59 months after BGR's name change took effect cannot reasonably be interpreted as having been filed 'promptly' as required by the regulations," *id.* at 774.

## II. ANALYSIS

MacLeod argues first that the Commission "has, in effect, voided BGR's tariff retroactively" merely because the carrier failed to observe a "technical nicet[y]," *viz.,* the regulation requiring prompt tariff adjustment after a name change. He points out that the filed rate doctrine prohibits the retroactive rejection of a filed rate, *see Interstate Commerce Commission v. American Trucking Assoc.,* 467 U.S. 354, 367, 104 S.Ct. 2458, 2465, 81 L.Ed.2d 282 (1984), and that this court has "rejected the view that a tariff on file with the Commission and never rejected by it should be disregarded or treated as nonexistent merely because of . . . some irregularity in the tariff filing formalities." *Genstar Chemical Ltd. v. ICC,* 665 F.2d 1304, 1308 (D.C.Cir.1981) *citing Berwind–White Coal Mining Co. v. Chicago & E.R.,* 235 U.S. 371, 35 S.Ct. 131, 59 L.Ed. 275 (1914).

MacLeod's argument mischaracterizes the Commission's decision. The Commission did not reject BGR's tariff retroactively; rather, interpreting 49 C.F.R. § 1312, it held that BGR never had a tariff on file with the Commission. Hence, MacLeod's observation that "the original tariff[s] filed by [Reeves] remained on file with the Commission throughout the period in question" is accurate but beside the Commission's point for the simple reason that those tariffs were filed by Reeves and not by BGR.

The Commission's interpretation of its regulation is entitled to substantial deference if it is merely reasonable. *See Udall v.*

*Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965). That interpretation is reasonable as a formal matter because the clear implication of the regulation is that unless a carrier adopts the rates filed by its predecessor under a different name, it will have no rate on file. *See* 49 C.F.R. § 1312.20(b)(1) ("adoption notices shall be filed . . . when (i) a carrier's name is lawfully changed; and the carrier wishes (for whatever period) to use the old carrier's tariffs"). It is also reasonable as a functional matter: the Reeves tariffs would not have aided a shipper seeking to verify the lawfulness of a rate charged by BGR, which is to say that they would not have fulfilled the function of a filed rate. *See, e.g., Regular Common Carrier Conference v. United States,* 793 F.2d 376, 379–80 (D.C.Cir.1986) (shipper's ability to determine rate from filed tariff is essential to purpose of ICA). That a shipper might be able to determine the rate previously on file either from its own independent investigations or from the carrier itself is immaterial; the shipper could not rely upon a tariff that the new incorporated carrier had never adopted. *Cf. Security Services, Inc. v. K Mart,* — U.S. —, —, 114 S.Ct. 1702, 1710, 128 L.Ed.2d 433 (1994) (*K Mart* ) (that shipper may otherwise be able to determine filed rate "cannot convert an incomplete tariff into a complete one"). Moreover, under the alternative interpretation of the regulation implicit in MacLeod's argument, a carrier that has changed its name would have no incentive ever to file a tariff notice.

Because we cannot say that the ICC's reading of its regulation is unreasonable, MacLeod's first argument fails. Rather than retroactively invalidating BGR's tariffs, the Commission here merely refused to allow BGR to adopt tariffs retroactively to a time when it had none.

The recent decision in *K Mart,* — U.S. —, 114 S.Ct. 1702, directly supports this conclusion. There the Supreme Court upheld the Commission's requirement that a carrier purporting to use a component tariff filed by another carrier be listed by name as a participant in that tariff, *see* 49 C.F.R. § 1312.4(d). The Court rejected the argument that the requirement "retroactively

voids rates" of a carrier that fails to maintain its participation in the component tariff; rather, as the Court saw the matter, "the regulation works like an expiration date on an otherwise valid tariff in voiding its future application." *Id.* at ——, 114 S.Ct. at 1709. The "technical defect" rule of *Berwind–White* was inapplicable because the Commission was "dealing not with a complete tariff subject to some blemish independently remediable, but with an incomplete tariff insufficient to support a reliable calculation of charges," *id.* at ——, 114 S.Ct. at 1710. That rationale applies with even greater force here, where the carrier had no tariff, much less an incomplete tariff, on file.

MacLeod would have us distinguish *K Mart* on the ground that the regulation there specifically provided that absent proper participation, a carrier's tariff is "void as a matter of law," 49 C.F.R. § 1312.4(d). He cites for support *Norwest Transportation, Inc. v. Horn's Poultry, Inc.,* 23 F.3d 1151 (7th Cir.), *reh'g denied,* 37 F.3d 1237 (7th Cir.1994), in which the Seventh Circuit, noting the absence of a parallel void-for-non-adoption provision in 49 C.F.R. § 1312, held that a carrier could collect for undercharges based upon rates in tariffs it had failed to adopt after changing its name.

We are not persuaded that *K Mart* can be distinguished on that basis. The void-for-non-participation provision involved in *K Mart* was simply not material to the Court's analysis. To the extent that our conclusion here is inconsistent with *Norwest,* we must respectfully decline to follow that decision.

MacLeod's second argument is that the Commission's refusal to waive the rule requiring that BGR have "promptly" adopted Reeves's tariff is inconsistent with Commission precedent and therefore arbitrary and capricious, *see* 5 U.S.C. § 706(2)(A); *Atchison, T. & S.F.R. Co. v. Wichita Board of Trade,* 412 U.S. 800, 808, 93 S.Ct. 2367, 2375, 37 L.Ed.2d 350 (1973) (agency has "duty to explain its departure from prior norms"). He points out that the Commission had never before rejected adoption papers as untimely and that the staff had once accepted papers submitted almost as late—53 months after a name change—as the papers he submitted.

Moreover, MacLeod appends to his brief some decisions in which the Commission staff, after the Commission itself had rejected BGR's adoption papers, accepted adoption filings even tardier than BGR's.

█ A party challenging an agency's denial of its request for a waiver faces the difficult task of showing that the agency's reasons are "so insubstantial as to render that denial an abuse of discretion." *E.g., Thomas Radio Co. v. FCC,* 716 F.2d 921, 924 (D.C.Cir.1983). MacLeod has not shown either that the order under review is inconsistent with any earlier decision of the Commission itself or that it rests upon a defective rationale. MacLeod has shown only that the Commission staff waived the prompt-filing requirement in unrelated cases both before and after the Commission refused to waive the requirement in BGR's case.

It is well established that "the positions of an agency's staff do not preclude the agency from subsequently reaching its own conclusion," *San Luis Obispo Mothers for Peace v. NRC,* 789 F.2d 26, 34 (D.C.Cir.1986) (en banc). Therefore, the results reached by the staff in the earlier decisions are irrelevant to our analysis of the Commission's fidelity to its own precedents. *See also Amor Family Broadcasting Group v. FCC,* 918 F.2d 960, 962 (D.C.Cir.1990) (decisions of agency's subordinate body not binding on that agency).

Moreover, it does not even appear that the waivers granted by the staff are inconsistent with the Commission's order denying BGR a waiver. The Commission refused to waive its prompt-filing requirement for BGR because the carrier had already collected the rates that it had actually charged and because "nothing in the equities" favored granting the waiver. *ICC Decision,* 9 F.C.C.2d at 775. The Commission concluded that the waiver would serve "the sole purpose of allowing the trustee retroactively to file a rate higher than the one BGR charged and collected, so that the trustee can now demand that BGR's former shippers pay the trustee this new, higher 'filed' rate." *Id.* at 776.

Considering MacLeod's argument that adherence to the prompt-filing requirement would be inconsistent with previous staff de-

cisions to accept tardy tariff adoptions, the Commission noted that those cases

> involved ongoing carriers whose adoption [papers] were necessary to provide a filed rate structure for present, past, and future shipments. Unlike here, nothing in the record suggests that those [papers] were submitted solely to justify the extraction of higher rates for previously provided transportation by an entity lacking the authority (if and when BGR's authority was revoked) or ability to do so.

*Id.* at 774–75 n. 5. Assuming, with the ICC, that the staff's prior decisions were even relevant, MacLeod has not shown that the Commission erred in distinguishing them.

MacLeod contends that the staff has also waived the prompt-filing requirement in less compelling circumstances since the Commission rejected his adoption papers. For example, it appears that the Commission staff allowed a carrier retroactively to adopt a tariff some 73 months after a name change. *See Adoption Notice of J.J.W. Trucking, Ltd. d/b/a Trans. Chemical NW* (Issued Dec. 9, 1993; Effective October 30, 1987). It is also unclear whether these recent waiver decisions are inconsistent with the waiver policy that the Commission announced in the present case, for MacLeod makes no showing that any carrier involved in the more recent decisions had charged a rate other than the rate on file under its predecessor's name.

▬ The subsequent decisions are irrelevant in any event. We will not reach out to examine a decision made after the one actually under review. If it is indeed true that a more recent waiver decision is inconsistent with the order under review, then perhaps that decision is unlawful. *See CHM Broadcasting Partnership v. FCC,* 24 F.3d 1453, 1459 (D.C.Cir.1994) (agency "need not explain inconsistencies in the resolution of subsequent cases"); *see also Amor Broadcasting,* 918 F.2d at 962 (it is "more appropriate for the parties to [inconsistent] later cases to contest the inconsistency, than for the present party to base its claim to inconsistency on subsequent opinions"). An agency's decision is not arbitrary or capricious merely because it is not followed in a later adjudication. *See Altamont Gas Transmission Co. v.*

*FERC,* 965 F.2d 1098, 1101 (D.C.Cir.1992) (agency's "later change [in policy], even if itself invalid ... cannot retroactively invalidate a decision that was sound when made"); *see also WLOS TV, Inc. v. FCC,* 932 F.2d 993, 995 (D.C.Cir.1991) (agency may depart from preexisting policy in administrative adjudication if it provides "reasoned analysis indicating that prior policies and standards are being deliberately changed, not casually ignored").

Apart from these phantom inconsistencies with staff decisions before and since, MacLeod argues that the Commission's action is arbitrary and capricious because it rejected his adoption papers based not upon their "lack of promptness, but because [he] is seeking the collection of undercharges." But the Commission did reject BGR's adoption papers because they were not "promptly" filed; and its interpretation of promptness to mean in effect within less than 59 months is not unreasonable. *Cf.* 49 C.F.R. § 1312.20 (1995) (prompt-filing regulation now requires adoption papers to be filed "no ... later than 60 days" after name change).

That BGR charged a rate different from that on file under its prior name was relevant only to the Commission's denial of the requested waiver. We see no reason why the Commission, when determining whether to waive its prompt-filing requirement, should be prohibited from considering the rate actually charged. Therefore, we certainly cannot say that the Commission's explanation of its decision to deny the waiver is "so insubstantial as to render that denial an abuse of discretion." *E.g., Thomas Radio Co. v. FCC,* 716 F.2d at 924 (D.C.Cir.1983).

### III. CONCLUSION

For the foregoing reasons, the order under review is

*Affirmed.*