**In re AMERICANA EXPRESSWAYS, INC., Debtor.**

**Kenneth A. RUSHTON, Trustee, Plaintiff,**

**v.**

**AMERICAN PACIFIC WOOD PRODUCTS INC., Defendant.**

Bankruptcy No. 91C–25142.
Adv. No. 94PC–2245.
Civil No. 94–C–873G.

United States District Court,
D. Utah,
Central Division.

Jan. 23, 1996.

---

Michael N. Zundel, Jeffrey J. Devashrayee, Salt Lake City, UT, Robert B. Walker, Provo, UT, and Professor Richard G. Wilkins, for plaintiff.

Lon Rodney Kump, Richards Bird & Kump, P.C., Salt Lake City, UT, and Raymond A. Selvaggio, Huntington, NY, for defendant.

Brendon Collins, for U.S. Dept. of Justice.

Theodore Kalick, Washington, DC, for Interstate Commerce Commission ("ICC").

## MEMORANDUM DECISION AND ORDER

J. THOMAS GREENE, District Judge.

This matter is before the court on Defendant's Motion for Summary Judgment and Plaintiff's Cross Motion for Partial Summary Judgment. A hearing was held on October 16, 1995, at which time plaintiff was represented by Michael N. Zundel, Jeffrey J. Devashrayee, Robert B. Walker, and Professor Richard G. Wilkins. Defendant was represented by Lon Rodney Kump and Raymond A. Selvaggio. Brendon Collins represented the United States Department of Justice, and Theodore Kalick represented the Interstate Commerce Commission ("ICC"). Upon submission of post-hearing memorandums of law, the motions were taken under advisement. Now being fully advised, the court issues its Memorandum Decision and Order.

## BACKGROUND

■ Americana Expressways, Inc. ("Americana") operated as a common carrier for several years before it became a debtor in possession under Chapter 11 in bankruptcy. As a common carrier, Americana was regulated by the ICC which administers the Interstate Commerce Act ("Act"), 49 U.S.C. § 10101, *et seq.* Under the Act, common carriers are required to charge shippers the tariff rates which the carriers file with the ICC. Under this "filed rate" doctrine, a shipper is liable to pay the filed rate, unless the ICC determines it to be unreasonable.

*Louisville & Nashville R.R. Co. v. Maxwell,* 237 U.S. 94, 97, 35 S.Ct. 494, 495, 59 L.Ed. 853 (1915); *see generally, In re Lifschultz Fast Freight Corp.,* 63 F.3d 621 (7th Cir. 1995); *In re Americana Expressways,* 177 B.R. 960 (D.Utah 1995).

With passage of the Motor Carrier Act of 1980,[1] Congress significantly deregulated the trucking industry. Carriers negotiated lower rates with shippers. In instances when some such carriers filed for bankruptcy, Trustees in bankruptcy typically would seek to recover "undercharges" (the difference between the filed rate and the negotiated rate) as part of the bankruptcy estate. Shippers claimed this practice was unreasonable. The ICC declared that it was unreasonable in view of the negotiated lower rates. However, the Supreme Court, in *Maislin Industries, U.S., Inc. v. Primary Steel, Inc.,* 497 U.S. 116, 110 S.Ct. 2759, 111 L.Ed.2d 94 (1990), struck down the ICC's policy on the ground that it violated the statutory duty created by the Act to charge the applicable tariff rates.

In response to *Maislin,* Congress passed the Negotiated Rates Act of 1993 ("NRA").[2] Section 9 provides that nothing in the NRA "shall be construed as limiting or otherwise affecting application of title 11, United States Code, relating to bankruptcy [or] title 28, United States Code, relating to the jurisdiction of the United States . . ."

Americana filed a voluntary petition under Chapter 11 of the Bankruptcy Code with the Bankruptcy Court for the District of Utah on August 9, 1991. Immediately thereafter, it began operating as "Americana Expressways, Inc., Debtor In Possession," and transported eighty two shipments under negotiated rates between November 4, 1991 and January 13, 1993 for defendant American Pacific Wood Products, Inc. ("American Pacific") as shipper. During all of these shipments, no tariff was on file with the ICC under the name "Americana Expressways, Inc., Debtor In Possession." As debtor in possession, Americana did not amend or file tariffs with the ICC and it did not adopt previously filed tariffs.

On February 18, 1993, Americana's Chapter 11 bankruptcy proceeding was converted to a Chapter 7 liquidation, and Kenneth A. Rushton was appointed as Trustee. The Trustee seeks to recover undercharges on the eighty two shipments in question as part of the bankruptcy estate.

## ANALYSIS

If the NRA is applicable to bankrupt carriers, it would greatly affect the amount of charges recoverable from shippers who had negotiated lower rates but who otherwise might be charged with liability for the filed tariff rate.[3] Before considering that matter, however, it is necessary to determine whether legally effective filed tariff rates existed from which a differential compared with the negotiated rate could be determined. The threshold issue presented, then, is whether a debtor in possession in bankruptcy becomes a fiduciary with the duty to amend or adopt previously filed tariffs under which it was operating prior to bankruptcy. In the absence of such amendment or adoption, would shipments by a debtor in possession be subject to recovery of undercharges based upon the previously applicable tariffs?

Defendant American Pacific argues that in order for plaintiff effectively to claim an undercharge against the defendant, Americana as debtor in possession should have filed rates with the ICC or adopted its previously filed rates when it filed its voluntary bankruptcy petition. By not filing or adopting such rates, defendant argues, no filed rates existed in the name of "Americana Expressways, Inc., Debtor In Possession." Defendant has submitted an affidavit by Michael Bange to establish that without tariffs filed under the name "Americana Expressways, Inc., Debtor In Possession," Americana was

---

1. Pub.L. 96–296 (July 1, 1980); *see* note to 49 U.S.C. § 10101, "Short Title of 1980 Amendments."

2. Pub.L. 103–180 (Dec. 3, 1993); *see* note to 49 U.S.C. § 10101, "Short Title of 1993 Amendments."

3. Under the NRA, a carrier may seek the ICC's determination as to the rate's reasonableness or satisfy certain undercharge claims by paying a prescribed percentage. 49 U.S.C. § 10701(d) and (f).

performing transportation services without effective filed rates and with no legal basis for plaintiff to claim undercharges.[4] In this regard, defendant American Pacific argues that plaintiff has not shown that the tariffs it relies on are valid and applicable, due to the debtor in possession's failure to comply with section 1312.20 of the Code of Federal Regulations. That section, which was promulgated pursuant to the Act, provides in pertinent part:

> (a) General . . .
>
> (2) When a carrier's *name is lawfully changed or its operating authority transferred,* tariff adjustments must be made. The procedure to be followed depends on the particular circumstances.
>
> (b) Purpose of Adoption notices.
>
> (1) *Adoption notices shall be filed to reflect new ownership or control when—*
>
> (I) *A carrier's name is lawfully changed;*
>
> (ii) *A carrier's operating authority is transferred,* entirely or partially; or
>
> (iii) *A fiduciary (receiver, trustee, etc.) assumes possession and control of a carrier's property;* and when the carrier wishes (for whatever period) to use the old carrier's tariffs.
>
> (2) In addition to the adoption notice, an adoption supplement shall be filed to reflect the new carrier's adoption of the old carrier's tariff(s) . . .

49 C.F.R. § 1312.20 (emphasis added). Defendant interprets the regulation to require that tariffs be amended and adopted not only upon a legal change in name and transfer of operating authority, but upon assumption by a fiduciary of possession or control of a carrier's property. Defendant claims that when Americana became debtor in possession as a result of the bankruptcy filing it became a fiduciary and was charged with the duty to amend or adopt rates, but that it did not do so as required by the regulation.[5]

Plaintiff claims that defendant cannot rely on the aforesaid regulation because Americana was the same entity under Chapter 11 as it was before bankruptcy. In this regard, plaintiff argues that the designation "Americana Expressways, Inc., Debtor In Possession" did not constitute a legal change of name, that operating authority was not transferred, and that no outside fiduciary assumed control or possession of property. Plaintiff argues that since the ICC never revoked the tariff, it should still be enforced in spite of the technical deficiency that Americana as debtor in possession failed to adopt the rate.

11 U.S.C. § 1107(a) provides in pertinent part:

> § 1107. Rights, powers, and duties of debtor in possession.
>
> (a) Subject to any limitations on a trustee serving in a case under this chapter, and to such limitations or conditions as the court prescribes, *a debtor in possession shall have all of the rights . . . and powers, and shall perform all the functions and duties,* except the duties specified in sections 1106(a)(2), (3), and (4) of this title, *of a trustee serving in a case under this chapter.*

(Emphasis added).

 A debtor in possession is a fiduciary. *Commodity Futures Trading Commission v. Weintraub,* 471 U.S. 343, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985). In *Wolf v. Weinstein,* 372 U.S. 633, 649, 83 S.Ct. 969, 979, 10 L.Ed.2d 33 (1963), the Supreme Court said "the duties which the corporate Debtor in possession must perform during the proceeding are substantially those im-

---

**4.** Plaintiff has moved to strike portions of Michael Bange's affidavit as not based upon facts as required by Fed.R.Civ.P. 56(e). Defendant responds that plaintiff's reliance on Rule 56(e) is misplaced, and that Bange's conclusions are admissible as expert opinion. In this regard, the court accepts Mr. Bange as a recognized transportation expert with high credentials. Plaintiff does not challenge Mr. Bange's qualifications or his expertise. His extensive experience and demonstrated expertise as applied to the facts and issues in this case are regarded as helpful to the

court. Accordingly, the motion to strike is denied. *See Bieghler v. Kleppe,* 633 F.2d 531, 533 (9th Cir.1980).

**5.** "Fiduciary" is defined in the regulations as "any person authorized by law to collect and preserve property of incapacitated, financially disabled, bankrupt or deceased holders of operating rights, and assignees of such holders." 49 C.F.R. § 1043.10.

posed upon the trustee." *Accord: Gramil Weaving Corp. v. Raindeer Fabrics*, 185 F.2d 537, 540 (2d Cir.1950); *Stein v. United Artists Corp.*, 691 F.2d 885, 892 (9th Cir.1982); *In re Bowman*, 181 B.R. 836, 843 (Bkrtcy. D.Md.1995); *In re Gillett Holdings, Inc.*, 137 B.R. 452, 458 (Bkrtcy.D.Colo.1991). The Tenth Circuit has held that a debtor in possession is "clothed with all powers of a trustee." *Zilkha Energy Co. v. Leighton*, 920 F.2d 1520, 1523 (10th Cir.1990); *see also In re Interwest Business Equipment, Inc.*, 23 F.3d 311, 316 (10th Cir.1994); The Fourth Circuit said in *In re J.T.R. Corp.*, 958 F.2d 602, 604 (4th Cir.1992), that a debtor in possession "holds the title and powers of [a] trustee." *Accord: In re International Yacht and Tennis, Inc.*, 922 F.2d 659 (11th Cir. 1991). All of these authorities stand for the proposition that when a debtor continues in possession of his property, although no third party trustee has been appointed, the powers and duties normally held by a trustee in bankruptcy become the debtor's own responsibility. *See* 11 U.S.C. § 1101(1). Manifestly, as the court noted in *Stein*, the extent of the fiduciary duties should not vary with the identity of the one who performs that role. 691 F.2d at 892.[6]

▆▆▆▆ It is apparent from the foregoing that when Americana became debtor in possession it also became a fiduciary. As a fiduciary it owed the same duties and had the same title and power as a trustee in bankruptcy. It was required to perform all the functions of a trustee. It was an officer of the court and a fiduciary to the bankruptcy court, as well as subject to the bankruptcy

court's power and control. Although a trustee was not appointed under Chapter 11, "Americana Expressways, Inc., Debtor In Possession" became the trustee. As a fiduciary Americana assumed possession and control of property, including operating authority, and commenced operations under a new name. These significant changes triggered and brought into play Section 1312.20 of the Code of Federal Regulations. *See Matter of Chicago, Missouri & Western Ry. Co.*, 156 B.R. 567, 575 (Bkrtcy.N.D.Ill.1993) ("Tariffs that are not properly adopted by a trustee or debtor after the debtor petitions for bankruptcy become void if they are not preserved through the procedures of § 1312.20 of title 49").

Under the aforesaid regulation, "Americana Expressways, Inc., Debtor In Possession" was required to amend or adopt the freight rates it would charge shippers, such as American Pacific. However, "American Expressways, Inc. Debtor In Possession" did not amend or adopt the previously filed rates and thus was performing transportation without effective filed rates. The only rates applicable to the eighty two shipments in question were the negotiated rates. It follows that American Pacific incurred no liability to pay undercharges based upon tariffs that were not filed. This court holds that plaintiff may recover from defendant only charges computed under that negotiated rates which were in effect at the time.[7]

Plaintiff's motion for partial summary judgment is not here addressed because the ruling on defendant's motion is dispositive.[8]

---

**6.** The debtor in possession, like a trustee, is an officer of the court subject to the bankruptcy court's complete power and control. *Matter of Tudor Associates, Ltd., II*, 64 B.R. 656 (E.D.N.C. 1986) (*citing City of New York v. Rassner*, 127 F.2d 703 (2d Cir.1942); *Power–Pak Products, Inc. v. Royal–Globe Insurance Company*, 433 F.Supp. 684, 687 (W.D.N.Y.1977)). The debtor in possession has obligations of fidelity, undivided loyalty and impartial service and is a fiduciary for all creditors. *In re Allegheny International, Inc.*, 100 B.R. 244, 246 (Bkrtcy.W.D.Pa.1989) (*citing United Steelworkers of America v. Lampl (In re Mesta Machine Co.)*, 67 B.R. 151, 156 (Bankr. W.D.Pa.1986)); *Chemical Bank v. Pilevsky*, 1994 WL 714287, *3 (S.D.N.Y.1994); *Matter of Shelby Motel Group, Inc.* 123 B.R. 98, 103 (N.D.Ala. 1990).

**7.** The court does not reach defendant's second argument in support of summary judgment, that the rates the plaintiff seeks to enforce are unreasonable.

**8.** Plaintiff seeks a declaration that the NRA is not applicable to carriers who have filed petitions in bankruptcy, and that it is unconstitutional. This court does not reach these issues and expresses no opinion thereupon. However, the court notes that the Eighth Circuit, in *In re Jones Truck Lines, Inc.*, 57 F.3d 642, 652 (8th Cir.1995), held not only that the NRA is applicable to such carriers and does not conflict with the Bankruptcy Code but that it does not work an unconstitutional taking. This is consistent with, and cites with approval, the opinion rendered by Judge Sam of this Court, in *In re Americana Express-*

For the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED and Plaintiff's Motion for Partial Summary Judgment is DENIED.

Counsel for defendant is instructed to prepare and submit to the court a form of judgment consistent with this Memorandum Decision and Order after first complying with Local Rule 206(b).

IT IS SO ORDERED.

*ways (Rushton v. Saratoga Forest Prod., Inc.),* 177 B.R. 960 (D.Utah 1995), *rev'g.,* 172 B.R. 99 (Bankr.D. Utah 1994).