**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 31 1997**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

_____

IN RE: AMERICANA EXPRESSWAYS,
INC.,

            Debtor

----------------------------------------------------

KENNETH A. RUSHTON, Trustee,

            Plaintiff-Appellant,

      v.

AMERICAN PACIFIC WOOD
PRODUCTS, INC.; UNITED STATES
GYPSUM COMPANY,

            Defendants-Appellees,

----------------------------------------------------

UNITED STATES OF AMERICA and
THE SURFACE TRANSPORTATION
BOARD,

            Intervenors.

No. 96-4055

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. No. 94-CV-873-G)

_____

Michael N. Zundel (Jeffery J. Devashrayee, also of Jardine Linebaugh & Dunn, Salt Lake City, Utah; Professor Richard G. Wilkins, Provo, Utah; and Robert B. Walker, Herndon, Virginia, with him on the briefs) for Plaintiff-Appellant.

Lon Rodney Kump of Richards, Bird & Kump, Salt Lake City, Utah (George Carl Pezold and Raymond A. Selvaggio of Augello, Pezold & Hirschmann, Huntington, New York, with him in the brief) for Defendant-Appellee American Pacific Wood Products, Inc.

Brendan Collins (J. Christopher Kohn and Tracy J. Whitaker, also of the Civil Division, Department of Justice, Washington, D.C.; Henri F. Rush, General Counsel, Ellen D. Hanson, Deputy General Counsel, and Theodore Kalick, Attorney, The Surface Transportation Board, Washington, D.C.; and Scott M. Matheson, Jr., United States Attorney, Salt Lake City, Utah, with him on the brief) for Intervenors the United States of America and The Surface Transportation Board.

---

Before MURPHY and LOGAN, Circuit Judges, and MILES-LaGRANGE, District Judge.[*]

---

LOGAN, Circuit Judge.

---

Plaintiff Kenneth A. Rushton, Chapter 7 bankruptcy trustee (trustee) for debtor Americana Expressways, Inc. (Americana), appeals the district court's grant of summary judgment for defendant American Pacific Wood Products, Inc. (defendant) in the trustee's suit to recover alleged undercharges on shipments Americana made for defendant. See Rushton v. American Pacific Wood Products, Inc. (In re Americana Expressways, Inc.), 192 B.R. 763 (D. Utah 1996). The trustee asserts that the district court erred in

---

[*] The Honorable Vicki Miles-LaGrange, United States District Judge for the Western District of Oklahoma, sitting by designation.

determining that Americana did not have a valid tariff to support the undercharge claim.

The trustee also argues that application of the Negotiated Rates Act to preclude his claim

would be unconstitutional. We affirm the district court's decision that there was no valid

tariff and thus do not reach the trustee's challenges to the Negotiated Rates Act.

I

Before addressing the issues presented in this appeal, an overview of the regulation

of common carriers is helpful.

> As a common carrier, Americana was regulated by the ICC which
> administers the Interstate Commerce Act ("Act"), 49 U.S.C. § 10101, et
> seq. Under the Act, common carriers are required to charge shippers the
> tariff rates which the carriers file with the ICC. Under this "filed rate"
> doctrine, a shipper is liable to pay the filed rate, unless the ICC determines
> it to be unreasonable.
>
> With passage of the Motor Carrier Act of 1980, Congress significantly
> deregulated the trucking industry. Carriers negotiated lower rates with
> shippers. In instances when some such carriers filed for bankruptcy,
> Trustees in bankruptcy typically would seek to recover "undercharges" (the
> difference between the filed rate and the negotiated rate) as part of the
> bankruptcy estate. Shippers claimed this practice was unreasonable. The
> ICC declared that it was unreasonable in view of the negotiated lower rates.
> However, the Supreme Court, in Maislin Industries, U.S., Inc. v. Primary
> Steel, Inc., struck down the ICC's policy on the ground that it violated the
> statutory duty created by the Act to charge the applicable tariff rates.

Id. at 764-65 (citations and footnote omitted).

In response to Maislin Industries, U.S., Inc. v. Primary Steel, Inc., 497 U.S. 116

(1990), Congress passed the Negotiated Rates Act of 1993 (NRA). The NRA allows a

shipper to seek the ICC's determination that a rate is not reasonable, or to satisfy some

- 3 -

claims by paying a small percentage of the undercharge. See 192 B.R. at 765 & n.3 (citing 49 U.S.C § 10701(d) & (f) (1993)) (recodified at 49 U.S.C. §§ 13701, 13709, 15501). The NRA also exempts small businesses, charities, and shippers of recyclable materials from undercharge suits. 49 U.S.C. § 10701(f)(9) (1993) (recodified at 49 U.S.C. § 13709). Many trustees in undercharge suits arising after enactment of the NRA have asserted that "Congress did not intend the NRA to apply to bankrupt carriers, that the Bankruptcy Code precludes nonbankruptcy statutes from affecting the value of property in the estate, and that application of the NRA to [the estate] would result in an unconstitutional taking." See, e.g., Jones Truck Lines, Inc. v. Whittier Wood Prods Co. (In re Jones Truck Lines), 57 F.3d 642, 645 & n.3 (8th Cir. 1995). As the district court in the instant case noted, "[i]f the NRA is applicable to bankrupt carriers, it would greatly affect the amount of charges recoverable from shippers who had negotiated lower rates but who otherwise might be charged with liability for the filed tariff rate." 192 B.R. at 765.

After Americana filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code on August 9, 1991, it became a debtor in possession. Americana's Chapter 11 bankruptcy proceeding was converted to a Chapter 7 liquidation on February 18, 1993, and Kenneth A. Rushton was appointed as trustee for the bankruptcy estate. As trustee he sought to recover freight undercharges from defendant for eighty-two

shipments that Americana had transported for defendant between November 4, 1991, and January 13, 1993, under negotiated rates.

The district court[1] found that after filing a Chapter 11 petition Americana, as debtor in possession, was required to file an adoption notice pursuant to 49 C.F.R. § 1312.20 in order to maintain effective filed rates. Because Americana failed to do so it did not have an effective filed tariff and could not recover for the alleged undercharges. See 49 U.S.C. § 13702(a); cf. Security Servs. Inc. v. K Mart Corp, 511 U.S. 431, 444 (1994) (trustee in bankruptcy "may not collect for undercharges based on filed, but void, rates"). The district court thus granted defendant summary judgment.[2]

II

We review a grant of summary judgment de novo, applying the legal standard used by the district court under Fed. R. Civ. P. 56(c). "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that

---

[1] Although the trustee originally filed the complaint in the bankruptcy court, defendant's motion for transfer to the district court was granted.

[2] The United States intervened in the district court on behalf of the ICC (predecessor to the Surface Transportation Board), asserting that the court should not reach the NRA issues. Because of its disposition on the ground there was no effective filed tariff the district court did not address the trustee's motion for partial summary judgment challenging the application of the NRA to bankrupt carriers and asserting that the NRA is unconstitutional. On appeal the Surface Transportation Board has been substituted for the ICC as intervenor and makes the same argument which, because of our disposition, we also need not address.

the moving party is entitled to judgment as a matter of law." Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir. 1996) (quotations omitted).

No statutory provision applicable to carriers' filed rates determines the precise issue before us. But 49 U.S.C. § 13702(b)(1) states that the Surface Transportation "Board shall prescribe the form and manner of publishing, filing, and keeping tariffs." See also id. §§ 721(a) and 13301(a) and (f) (Board's general power to promulgate regulations). The Board's regulation treating the duty to refile provides in relevant part:

§ 1312.20 **Transfer of operations--change in name and control.**

(a) *General.* (1) As used in this section--
(i) *Old carrier* refers to the carrier or party whose name is changed or whose operating authority is transferred;
(ii) *New carrier* refers to the new name of the old carrier or to the party to which the operating authority is transferred; and
(iii) *Adoption publications* refers to adoption notices, and combination adoption notices and adoption supplements.
(2) When a carrier's name is lawfully changed or its operating authority transferred, tariff adjustments must be made. The procedure to be followed depends on the particular circumstances.
(b) *Purpose of adoption notices.* (1) Adoption notices shall be filed to reflect new ownership or control when--
(i) A carrier's name is lawfully changed;
(ii) A carrier's operating authority is transferred, entirely or partially; or
(iii) A fiduciary (receiver, trustee, etc.) assumes possession and control of a carrier's property; and when the carrier wishes (for whatever period) to use the old carrier's tariffs.

49 C.F.R. § 1312.20.

The district court reasoned that when Americana became a debtor in possession it became a "fiduciary" that assumed "possession and control" of its property and thus

under § 1312.20 was required to amend or adopt the old rates.[3]  The trustee asserts that although Americana had additional fiduciary duties upon filing its Chapter 11 petition, it was not a "fiduciary" within the contemplation of the regulation.

There is no definition of fiduciary in the applicable regulations other than the parenthetical "(receiver, trustee, etc.)" in § 1312.20(b)(1)(iii).  There is a definition of fiduciary in the Board's regulations dealing with surety bonds and insurance, see 49 C.F.R. § 1043.10:  "The term 'fiduciary' means any person authorized by law to collect and preserve property of any incapacitated, financially disabled, bankrupt, or deceased holders of operating rights, and assignees of such holders."  The trustee asserts that the debtor in possession does not fit this definition because it remained the same entity before and after filing its petition.  Under this definition, however, Americana certainly is authorized "to collect and preserve" its own property and because it sought protection of the bankruptcy court is "bankrupt" or at least "financially disabled."

The regulations dealing with mergers or transfers of operating rights define person as "[a]n individual, partnership, corporation, company, association, or other form of business, or a trustee, receiver, assignee, or personal representative of any of these."  49

---

[3]  The district court relied on a similar case, Murray v. Mobil Oil Co. (In re Chicago, Missouri & W. R.R. Co.), 156 B.R. 567 (Bkrtcy. N.D. Ill. 1993), for its statement that "Tariffs that are not properly adopted by a trustee or debtor after the debtor petitions for bankruptcy become void if they are not preserved through the procedures of § 1312.20 of title 49."  See 192 B.R. at 767 (citing 156 B.R. at 575).  As the trustee points out on appeal, however, Murray involved a railroad bankruptcy reorganization in which a third party trustee was appointed; thus § 1312.20(b)(1)(iii) clearly applied.

C.F.R. § 1181.1(d). The Motor Carriers Act, in its definition section, states that the term person "includes a trustee, receiver, assignee, or personal representative of a person." 49 U.S.C. § 13102(16). These definitions provide no conclusive answer to the question before us, though they do not point away from the district court's interpretation. We believe it appropriate to turn for assistance to the Bankruptcy Code to determine just how Americana's status changed when it became a debtor in possession after filing under Chapter 11.

In all essential respects a debtor in possession in a Chapter 11 bankruptcy proceeding is subject to the same responsibilities as a trustee. It is in effect trustee of its own business for the benefit of creditors. 11 U.S.C. § 1107(a) provides in part:

**§1107. Rights, powers, and duties of debtor in possession**

> **(a)** Subject to any limitations on a trustee serving in a case under this chapter, and to such limitations or conditions as the court prescribes, a debtor in possession shall have all of the rights . . . and powers, and shall perform all the functions and duties, except the duties specified in sections 1106(a)(2), (3), and (4) of this title, of a trustee serving in a case under this chapter.

11 U.S.C. § 1107(a). The debtor in possession--like a trustee, if one is appointed--must file and have approved a plan as to how it will pay its debts. Under Bankruptcy Rule 2015, if the court directs, the debtor in possession must file a complete inventory of its property, keep a record of receipts and disposition of money and property, and file complete reports of all its transactions. Included among its duties is the following:

as soon as possible after the commencement of the case, give notice of the case to every entity known to be holding money or property subject to withdrawal or order of the debtor, including every bank, savings or building and loan association, public utility company, and landlord with whom the debtor has a deposit, and to every insurance company which has issued a policy having a cash surrender value payable to the debtor, except that notice need not be given to any entity who has knowledge or has previously been notified of the case.

Id. R. 2015(a)(4).

Under 11 U.S.C. § 1107 and bankruptcy case law, a debtor in possession, like a bankruptcy trustee, is a fiduciary. See Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343, 352-53 (1985); Wolf v. Weinstein, 372 U.S. 633, 651 (1963) ("[W]illingness to leave the debtor in possession is premised upon an assurance that the officers and managing employees can be depended upon to carry out the fiduciary responsibilities of a trustee."); Coastal Virginia Bank v. March, 995 F.2d 32, 34 (4th Cir. 1993) ("debtor-in-possession . . . is acting as a trustee for all his creditors"); Zilkha Energy Co. v. Leighton, 920 F.2d 1520, 1523 (10th Cir. 1990) (debtor in possession is "clothed with all powers of a trustee"); see also 4 Norton Bankr. L. & Prac. 2d § 77A:5 (1997) ("When the debtor corporation remains in possession . . . its fiduciary obligations run to 'the estate.'").

The trustee argues, however, that even if it is a "fiduciary," the § 1312.20(b)(iii) provision that adoption notices are required when "[a] fiduciary (receiver, trustee, etc. ) assumes possession and control of a carrier's property" (emphasis added) shows that the regulations apply only when a new, disinterested party comes into control of the carrier,

not when a carrier becomes a debtor in possession. The trustee argues that § 1312.20(b)(iii) does not apply to Americana because it was <u>already</u> in possession and control of its property, that because Americana is the same entity that existed before filing bankruptcy it could not "assume" possession and control of its own property.

We are not persuaded by this argument. The United States Trustee has the responsibility for supervising Chapter 11 debtors in possession. The trustee's Operating Guidelines and Reporting Requirements mandate that the debtor in possession close prepetition bank accounts and open new accounts that include the words "Debtor in Possession." <u>See</u> Appellees' Supp. App. 91.[4] The debtor in possession is an officer of the court and subject to the bankruptcy court's power and control. <u>See</u> <u>Chmil v. Rulisa Operating Co. (In re Tudor Assocs. Ltd. II)</u>, 64 B.R. 656, 661 (E.D.N.C. 1986). The court can require the debtor in possession to notify all entities with whom it does business of its new status. Bankr. R. 2015(a). The debtor in possession, like a trustee, has the power to reject collective bargaining agreements, 11 U.S.C. § 1113; it may "assume or reject any executory contract or unexpired lease of the debtor," <u>id.</u> § 365(a). In these circumstances it seems no stretch to require the debtor in possession to determine whether to affirm or reject tariff rates it filed before bankruptcy.

---

[4] The trustee objects to reliance on these guidelines because the U.S. Trustee has no rule-making authority. The U.S. Trustee, however, does have significant authority and responsibility in supervising Chapter 11 reorganizations. <u>See</u> 11 U.S.C. §§ 1102, 1104, 1105.

If a trustee appointed to operate the debtor under a Chapter 11 reorganization is required to refile when it wishes to use the entity's previously filed tariffs, as 49 C.F.R. § 1312.20(b)(iii) clearly contemplates, it would seem to follow that the debtor in possession--which otherwise has the same responsibilities as a trustee--has the same duty. Such a reading is consistent with the expansive "etc." in § 1312.20(b)(iii) and later provisions in that regulation stating the form of rate filings by fiduciaries. See. id. § 1312.20(g) ("adoption notices filed by a fiduciary shall be in the old carrier's series and the designation shall be identified by naming the old carrier followed by 'series'"); id. § 1312.20(k) ("When a fiduciary assumes . . . operating control of a carrier, tariff publications . . . shall show the name of the carrier, followed by the name and capacity of the fiduciary").

We agree with the district court's conclusion that when Americana filed for Chapter 11 bankruptcy and became a debtor in possession, it became a fiduciary that assumed "possession and control" and was subject to the adoption requirements of § 1312.20(b)(1)(iii).

III

The trustee asserts that even if it was required to file an adoption notice, its failure to do so was a minor or technical inadequacy and that defendant should not be allowed to

use that technicality to circumvent the filed rate doctrine, relying on Norwest Transp., Inc. v. Horn's Poultry, Inc., 23 F.3d 1151 (7th Cir.), op. denying reh'g, 37 F.3d 1237 (1994), cert. denied, 514 U.S. 1004 (1995). In Norwest Transportation, the carrier changed its name but failed to follow the ICC's directive to amend its tariffs. Despite this failure the court upheld the validity of the tariff because the ICC had taken no action to suspend or revoke it. The court reasoned that because the refiling regulation did not specify a consequence for failure to comply, the court should not impose its own sanction. See 23 F.3d at 1153-54. Acknowledging that the instant case is not identical, the trustee asserts that similarly we should not allow a shipper to avoid the application of the filed tariff rate "simply because Americana as a debtor in possession allegedly failed to adopt tariffs." Brief of Appellant Kenneth A. Rushton, Trustee, at 16.

A similar argument was made and rejected in MacLeod, Trustee for BGR Transp. Inc. v. Interstate Commerce Comm'n, 54 F.3d 888 (D.C. Cir. 1995). In MacLeod, a trucking company incorporated and changed its name; although the ICC ordered it to amend its tariff to reflect the new name, it failed to do so. The corporation later filed Chapter 7 bankruptcy, and the trustee claimed undercharges. When shippers defended on the ground that the corporation had not filed new tariffs, the trustee attempted to file new tariffs almost five years after the name change; the ICC rejected the filing. The D.C. Circuit court upheld the ICC's action, stating that "the clear implication of [49 C.F.R. § 1312] is that unless a carrier adopts the rates filed by its predecessor under a different

name, it will have no rate on file." Id. at 890. As a practical matter, "the shipper could not rely upon a tariff that the new incorporated carrier had never adopted." Id.

In MacLeod, the trustee attempted to distinguish K Mart "on the ground that the regulation there specifically provided that absent proper participation, a carrier's tariff is 'void as a matter of law,'" MacLeod, 54 F.3d at 891 (quoting 49 C.F.R. § 1312.4(d)). This was an argument the Norwest Transportation court found persuasive. See 37 F.3d at 1239. MacLeod rejected the argument, noting that such a provision "was simply not material to the [K Mart] Court's analysis." 54 F.3d at 891. We agree with the D.C. Circuit's MacLeod panel.

We believe the K Mart case indicates that the "technical defect" exception should be applied narrowly. This is consistent with Maislin Industries, which stated, "this Court has read the statute to create strict filed rate requirements and to forbid equitable defenses." 497 U.S. at 127. In the case before us the debtor in possession's failure to comply with § 1312.20(b)(iii) by adopting the tariff on file before bankruptcy, or filing new tariffs, means that it had no filed rate. Thus, the trustee has no basis for an undercharge suit.

AFFIRMED.